UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES DEPARTMENT OF JUSTICE,

                          Petitioner

v.                                             Case No. 18-mc-00056

MICHELLE RICCO JONAS,

                          Respondent

**OBJECTION TO PETITION TO COMPEL
COMPLIANCE WITH ADMINISTRATIVE SUBPOENA**

Michelle Ricco Jonas ("Ricco Jonas"), by and through her attorneys, the Office of the New Hampshire Attorney General, hereby objects to the Petition to Compel Compliance with Administrative Subpoena ("Petition"), filed by the United States Department of Justice ("USDOJ"), as follows:

**PRELIMINARY STATEMENT**

On February 28, 2018, the Drug Enforcement Administration ("DEA") issued an administrative subpoena (the "February 28 Subpoena") pursuant to 21 U.S.C. § 876 of the Controlled Substances Act ("CSA") to "The New Hampshire Prescription Drug Monitoring Program, care of the New Hampshire Office of the Attorney General." Decl. of Anthony J. Galdieri, Esq. in Support of Respondent's Objection to Petition of Compel Compliance with Administrative Subpoena ("Galdieri Decl."), Ex. A-1. The Attorney General's Office accepted service and objected to the subpoena on the ground that neither the New Hampshire Prescription Drug Monitoring Program ("NH PDMP") nor the New Hampshire Pharmacy Board (the "Board") was a "person" subject to subpoena under the governing statute, 21

1

U.S.C. § 876.   Galdieri Decl., Ex. A-2.   The Attorney General's Office invoked the longstanding, well-settled rule of statutory construction that the term "person" is presumed not to include the sovereign.   *See, e.g.*, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64 (1989); *United States v. Cooper*, 312 U.S. 600, 606-07 (1941).   The DEA abandoned that subpoena.

On June 11, 2018, the DEA issued another administrative subpoena (the "June 11 Subpoena"), again pursuant to 21 U.S.C. § 876, to "Michelle Ricco Jonas, Program Manager for the NH PDMP."   Galdieri Decl., Ex. A-3.   The subpoena identified Program Manager Ricco Jonas' employment address with the State, as well as her office telephone and fax numbers, and sought the very same information as that described in February 28 Subpoena. Declaration of Michelle Ricco Jonas ("Ricco Jonas Decl."), Exhibit B ¶ 6.   The Attorney General's Office accepted service of the June 11 Subpoena and objected to it, invoking the same legal analysis and adding that Program Manager Ricco Jonas is a state official and therefore, like the New Hampshire Pharmacy Board itself, is not a "person" within the meaning of 21 U.S.C. § 876 or the CSA generally. Galdieri Decl., Ex. A-4.   The DEA did not reply to the objection.

The USDOJ subsequently notified the Attorney General's Office of its intent to file a petition to enforce the June 11 Subpoena and asked if the Attorney General's Office would accept service of process.   The Attorney General's Office requested a courtesy copy of the petition, which was never provided.   Galdieri Decl., Ex. A-5.   Nonetheless, on August 7, 2018, the Attorney General's Office informed the USDOJ that it would accept service of process on Ricco Jonas, in her official capacity as Program Manager of the NH PDMP, consistent with designation on the June 11 Subpoena.   Galdieri Decl., Ex. A-6.   In response,

2

the USDOJ indicated it would not agree to that arrangement, declaring for the first time that despite the text of the June 11 Subpoena, it intended to serve the petition to enforce on Ricco Jonas in her *personal capacity*. *See id.*  In an effort to cooperate and secure amicable service of process, the Attorney General's Office again requested a courtesy copy of the petition to enforce so it could understand what the DEA intended to file and then properly advise its client.  *Id.*  The USDOJ refused and stated that it would file the petition to enforce and serve Ricco Jonas at her office address.  *Id.*  The USDOJ caused the Petition to be served on August 23, 2018.

Against this backdrop, the USDOJ now seeks enforcement of the June 11 Subpoena against Ricco Jonas in her *personal capacity*, though that Subpoena was never issued to her in her *personal capacity*, and Ricco Jonas, as an *individual*, does not possess, control or otherwise have custody or lawful access to the information described in the June 11 Subpoena.  Ricco Jonas Decl., Exhibit B ¶¶ 7-9.  The Petition is nothing more than an attempt to circumvent federal law and should be denied for at least the following reasons.

**First**, the DEA has failed to meet its threshold burden of showing, by affidavit, that the investigation it is pursuing will be conducted pursuant to a legitimate purpose, that its investigation is authorized by Congress, that the inquiry is relevant, and that the administrative steps required by 21 U.S.C. § 876 have been followed.

**Second**, the June 11 Subpoena was not issued to the named Defendant herein, Ricco Jonas in her *personal* capacity, but rather to an employee of a sovereign state agency in her *official* capacity as Program Manager of the NH PDMP.

**Third**, Ricco Jonas, in her *personal capacity*, does not have possession, custody, control, or lawful access to any of the information the June 11 Subpoena seeks, and the DEA

3

cannot conscript her or any employee of a sovereign State agency to purloin State-owned confidential information in order to meet the command of that subpoena.

*Fourth*, Program Manager Ricco Jonas, in her official capacity, is a state official, does not constitute a "person" subject to subpoena within the meaning of 21 U.S.C. § 876 or the CSA generally, and therefore cannot have a subpoena under 21 U.S.C. § 876 issued to her, served on her, or enforced against her.

*Fifth*, the Fourth Amendment-based expectation of privacy held by persons in their NH PDMP-kept prescription drug records overcomes the June 11 administrative subpoena and requires that DEA first undertake to demonstrate probable cause in order to acquire the information it seeks.

## BACKGROUND

### A. The New Hampshire Pharmacy Board's Prescription Drug Monitoring Program ("PDMP")

The New Hampshire Board of Pharmacy (the "Board") was established by the Legislature pursuant to RSA 318:2 [Pharmacy Board].  Its members are appointed by the governor, with the advice and consent of the executive council.  *Id*.  It has authority to make and adopt rules, RSA 318:5-a [Rulemaking Authority], and to adjudicate contested cases.  RSA 318-31 [Hearings, Decisions and Appeals].  As a state "agency" is defined to include any "board . . . authorized by law to make rules or to determine contested cases," RSA 541-A-1, II [Administrative Procedure Act – Definitions], the Board is a sovereign agency of the State of New Hampshire.  Further, all "boards," as "agencies" of the State, enjoy sovereign immunity, except as otherwise authorized by statute, *see* RSA 99-D:1, and are subject only to certain claims, RSA 541-B:1, I [Claims Against the State – Definitions].  Such claims may

result in judgments that are, by statute, limited in amount, *see* RSA 541-B:14 [Limitation on Actions and Claims], and that are ultimately paid from the State treasury or otherwise satisfied out of budgeted appropriations by the Legislature.  *See* RSA 541-B:13 [Claims Against the State – Payment of Claims].

On June 12, 2012, Governor Lynch signed SB 286, codified at RSA 318-B:31-41, which directed the Board to "design, establish, and contract with a third party for the implementation and operation of an electronic system [the PDMP] to facilitate the confidential sharing of information relating to the prescribing and dispensing of schedule II-IV controlled substances, by prescribers and dispensers within the state."  RSA 318-B:32.  For each prescription dispensed of a schedule II-IV controlled substance, pharmacies are obliged to electronically submit certain information to the PDMP database that includes, but is not limited to:

- patient's name

- patient's address

- patient's date of birth

- patient's telephone number

- National Drug Code (NDC) of the drug dispensed

- quantity dispensed

- number of days of supply of drug

- number of refills granted

- whether the prescription is new or a refill

- prescriber's identifying DEA registration number

RSA 318-B:33.

Since one who might freely mine the PDMP database would obtain significant patient-specific and identifiable health and treatment information about individuals, the New Hampshire legislature declared that "[i]nformation contained in the [PDMP database] … is confidential" and directed the Board to "establish and maintain procedures to ensure the privacy and confidentiality of patients and [of the] patient information" that dispensers were now commanded to input. RSA 318-B:34, II.  Thus, the legislation authorized the Board to release information contained within the PDMP database for, among other things, "statistical analysis, public research, public policy, and educational purposed, *provided* that the data are *aggregated* or otherwise *de-identified*."   RSA 318-B:34, III (emphasis supplied).   The legislation also authorized the Board to disclose PDMP data to:

> Authorized **law enforcement** officials on a case-by-case basis for the purpose of investigation and prosecution of a criminal offense **when presented with a court order based on probable cause**.  No law enforcement agency or official shall have direct access to the program.

RSA 318-B:35, I(b)(3) (emphasis supplied).

Only upon receipt of "a court order based on probable cause"[1] is the PDMP's "Program Manager" (the office presently occupied by Ricco Jonas)[2] authorized and directed "to provide the information identified in the court order in the format requested by the court order." N.H. Admin. R. Ph 1505.03(c).  These access limitations are punctuated by RSA 318-B:36, VII, which provides that *anyone*, including Ricco Jonas in any capacity other than as

---

[1] The order must "include[e] sufficient information to correctly identify the patient, prescriber or dispenser whose prescription monitoring information is the subject of the court order."  N.H. Admin. R. Ph 1505.03(b).

[2] The "Program Manager" is "the person designated by the [B]oard to oversee the implementation and operation of the program by the [third party] program vendor."  N.H. Admin. R. Ph. 1502.01(m), (n) [Definitions].

Program Manager, and even then as limited by RSA 318-B:35, "who knowingly accesses …
or discloses program information except as authorized in [the foregoing RSA 318-B:35] …
shall be guilty of a class B felony."

Other state statutes also make it a criminal offense for Ricco Jonas to use information
owned and controlled by the State to satisfy a personal obligation.  *See, e.g.*, RSA 643:1
[Official Oppression] ("A public servant … is guilty of a misdemeanor if, with a purpose to
benefit himself or another or to harm another, he knowingly commits an unauthorized act
which purports to be an act of his office….");  RSA 21-G:23, I [Code of Ethics – Misuse of
Position] ("No executive branch official or classified employee shall … disclose or use
confidential or privileged information acquired in the performance of his or her duties for the
state for personal benefit or financial gain."); RSA 21-G:34 [Penalty] ("Any person who
knowingly or willfully violates [RSA 21-G:23] … shall be guilty of a misdemeanor and may
be subject to disciplinary action ….").

## STANDARD OF REVIEW

"In general, an agency subpoena is enforceable if it is for a proper purpose authorized
by Congress, the information sought is relevant to that purpose and adequately described, and
statutory procedures are followed in the subpoena's issuance." *United States v. Comley*, 890
F.2d 539, 541 (1st Cir. 1989).  "The role of a court in a subpoena enforcement proceeding is
strictly limited to inquiring whether the above requirements have been met." *Id.*  In order to
enforce a subpoena, the agency must make a *prima facie* showing that "(1) its investigation is
authorized by Congress and is for a purpose Congress can order and (2) that the documents
sought are relevant to the investigation and adequately described." *United States v. Trivian
Labs., Inc.*, 589 F.2d 49, 54 (1st Cir. 1978).  "[A]ffidavits of government officials have been

accepted as sufficient to make out a *prima facie* showing that these requirements are satisfied." *Comley*, 890 F.2d at 541.

## ARGUMENT

**A.  The DEA Has Failed To Make A *Prima Facie* Showing, Supported By Affidavit, That The June 11 Subpoena May Lawfully Be Enforced.**

As stated above, it is the agency's burden to come forward with, at the very least, an affidavit establishing that the requirements to enforce its subpoena have been met. *See, e.g.*, *Comley*, 890 F.2d at 541 *Trivian Labs., Inc.*, 589 F.2d at 54; *see also United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014); *Fed. Deposit Ins. Corp. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995).  In this case, the Petition sets forth *no facts*, verified by affidavit or not, from which the Court could conclude that the USDOJ has met its threshold, *prima facie* burden.  The lack of an affidavit establishing *prima facie* grounds for enforcement is dispositive of the case.  The Court's inquiry need therefore proceed no further and the Petition should properly be dismissed on this basis.

**B.  The June 11 Subpoena Names and was Served on Ricco Jonas Solely in her *Official* Capacity, as Program Manager for the PDMP, *Not* in her *Personal Capacity*. Therefore, the Instant Enforcement Action Against Ricco Jonas Individually Must be Dismissed.**

The June 11 Subpoena (ECF Doc. # 1-3) is directed at "Michelle Ricco Jonas, Program Manager for the NH PDMP[,] 121 South Fruit Street[,] Concord, NH 03301."  While common sense informs us that Ricco Jonas was named in the Subpoena and served with that instrument in her *official* capacity, not her *personal capacity*, the point is punctuated by an abundance of authority which declares that *official capacity* suits include those "that fail to designate expressly the nature of the suit through the utilization of the terms 'official capacity' or 'personal capacity,' but which list in the case name of the complaint (here, the

June 11 Subpoena) the **official's job title**, *i.e.*, [Michelle Ricco Jonas, Program Manager for the NH PDMP]. *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985); *see also*, *Love v. Hayden*, 757 F. Supp. 1209, 1211 (D. Kan. 1991) ("Generally, where the plaintiff fails to expressly designate the nature of the suit [official versus personal capacity] in the complaint and identifies the defendants solely according to their job titles, the court must presume that the officials have been sued in their official capacities.").[3]

Moreover, the June 11 Subpoena commands that Ricco Jonas undertake an act – "the production of records … maintained by the New Hampshire Prescription Drug Monitoring Program" – that she cannot perform *except* (a) in her *official* capacity as PDMP Program Manager, and even then as limited by RSA 318-B:35, to which the Subpoena does not conform, or (b) in her *personal capacity* via the commission of several state crimes. *See Brancaccio v. Reno*, 964 F. Supp. 1, 2 (D.D.C. 1997) (dismissing action against defendants in their individual capacities where allegations "refer to activities that could only be performed by defendants in their official capacities."). Ricco Jonas Decl., Exhibit B ¶ 9. As the District Court stated in *Cordero v. Warren*:

> It is axiomatic that a party is not required to produce documents that are not in his possession, custody or control. The Court rejects Plaintiff's argument that [individual] Defendants, as employees of the [New Jersey Department of Corrections], can simply "access [NJDOC's] database" themselves to retrieve this information.

*Cordero v. Warren*, 2016 WL 8199305, at *2 (D.N.J. Oct. 4, 2016), *aff'd*, 2017 WL 2367049 (D.N.J. May 31, 2017) (citation omitted).

---

[3] The DEA provides no explanation for its assertion at page 2 of its Memorandum (Doc. # 1-1) that the June 11 Subpoena "was served on Ricco Jonas individually and does not seek any remedy from the State of New Hampshire."

The USDOJ provides no explanation for its dubious assertion at page 2 of its Memorandum (ECF Doc. # 1-1) that the June 11 Subpoena "was served on Ricco Jonas individually and does not seek any remedy from the State of New Hampshire." Indeed, the DEA had ample opportunity to so inform the Attorney General's Office if it truly was seeking to serve the subpoena on Ricco Jonas in her personal capacity after reviewing the Office's second objection, but failed to do so. It also had ample opportunity itself or through counsel to ask if the Attorney General's Office was the proper authority to accept service of a subpoena issued to a state employee in her personal capacity, but never did so. Consequently, the background surrounding the issuance and service of the subpoena belie the notion that it was issued to Ricco Jonas in her personal capacity. Rather, the USDOJ's eleventh-hour shift in focus for purposes of the Petition appears to be nothing more than a concession that the Attorney General's Office's legal position regarding the construction and interpretation of such "persons" who may be subject to subpoena under 21 U.S.C. § 876 is correct.

Even if the Court puts aside what the June 11 Subpoena says and looks exclusively to the nature of the relief sought therein, the result is the same: "In an official capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285, 1291 (2017). Of course, the question of "whose ox is gored" by releasing

- information in a State Government database – *i.e.* the confidential patient-specific and identifiable health and treatment information of this State's citizenry –

- which was created by the command of the State Legislature, and funded and entrusted to the thoughtful and discreet stewardship of a State Agency

plainly answers itself.  By this measure and, *again*, as the text of the instrument plainly recites, the June 11 Subpoena names and was served on Ricco Jonas, as "Program Manager for the NH PDMP," *not* in her personal capacity.

The case law cited by the USDOJ, *see* Memorandum (ECF Doc. # 1-1) at 7, does not support (or, for that matter, relate to) its argument that the June 11 Subpoena was directed at Ricco Jonas individually, rather than in her official capacity as NH PDMP Program Manager – and it is not a close call.

 A. First, the DEA points the Court to *Lewis v. Clarke*, ___ U.S. ___, 137 S. Ct. 1285 (2017), in which the Supreme Court "h[e]ld, in a suit brought against a [Mohegan] tribal employee in his personal capacity" for tortious behavior committed in the course of his employment with a tribal sovereign, that the absence of any claim against the sovereign for equitable relief or for damages payable from tribal coffers confirmed that the employee had not been sued in his official capacity (and therefore could not assert tribal immunity).  *Id*. at ___, 137 S. Ct. at 1288, 1291 (2017).  This case does not support the DEA's position.

 B. The remaining cases hold that the Eleventh Amendment – a constitutional immunity – does not excuse a *non-party* custodian of state records from complying with a discovery subpoena therefor.  This is because, as Judge Posner stated in one such case, *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008), where "the State is not a party to or even remotely interested in the plaintiff's suit … an order commanding a [non-party] state official … to produce documents in the state's possession during the discovery phase of the case … do[es] not compromise state sovereignty *to a significant degree*."  *Id*. at 812 (emphasis supplied).  Judge Posner's caveat pays respect to *Dugan v. Rank*, in which the Supreme Court held that intrusions on sovereignty include not only those circumstances where a judgment would draw from the "public treasury," but also, as here, where it would "interfere with the public administration … [or put differently,] restrain the Government from acting, or compel it to act."  *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citations omitted).

As Ricco Jonas, in her *official* capacity as NH PDMP Program Manager, is not interchangeable with Ricco Jonas, as an *individual*, the instant enforcement action against the *latter* for compliance with a subpoena that names only the *former*, must be dismissed.  *See*

*Cupe v. Lantz*, 470 F. Supp.2d 128, 134 (D. Conn. 2007) (person named individually is a party separate and apart from that same person named in his or her official capacity).

**C. The DEA's Alternative Argument – that had the June 11 Subpoena Named A State Officer, it Would Still Have Been Enforceable – Is A *Hypothetical* That This Court Has No Article III "Case or Controversy" Jurisdiction to Consider.**

While Ricco Jonas, *individually*, is in the "possession, custody or control" of *nothing* called for in the June 11 Subpoena, the USDOJ nonetheless stands by its fragile position that this State, *twice* called upon, through its Attorney General, to accept service of the subpoena and then likewise asked to accept service of the Petition itself, has no interest in this case. The USDOJ proceeds to declare:

> In any event, even if the DEA served the subpoena directly on the State (which it did not do here), the result would be the same.  This is because the phrase "any person," as used in 21 U.S.C. § 876(c), should be construed to include the State and its agencies.

Memorandum (Doc. # 1-1) at 8.  That is to say, the USDOJ offers up a factual scenario that it professes to be *false* and then urges the Court to opine and advise on the how the law would apply.  This it may not do.

The DEA has presented its Petition to a Court of limited jurisdiction.  The Article III case-or-controversy requirement commands "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a *hypothetical* state of facts.'" *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), *quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (emphasis supplied); *see also, Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("An Article III federal court has

'no authority to give opinions upon … abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"), *quoting Mills v. Green*, 159 U.S. 651, 653 (1895).

The USDOJ refused to permit the Attorney General's Office to accept service of process on Ricco Jonas in her official capacity, contending it was serving the Petition on her solely in her personal capacity.  It then filed the Petition against Ricco Jonas, individually, and has maintained therein that it is seeking information from Ricco Jonas solely in her personal capacity.  The DEA never issued a subpoena to Ricco Jonas in her personal capacity and, in any event, Ricco Jonas does not possess, control, or otherwise have lawful access to any of the information the USDOJ seeks from her in that capacity. Ricco Jonas Decl. ¶¶ 7-9.

The USDOJ's request for an advisory opinion on whether, if it had served its Petition on Program Manager Ricco Jonas in her official capacity (a fact it now rejects as false), it could enforce the June 11 Subpoena against her as a state official is not before the court or, put differently, within its Article III jurisdiction to address.

**D. Under 21 U.S.C. § 876, States, Their Sovereign Agencies, And Their Officials In Their Official Capacities Are Not "Persons" To Or On Whom Subpoenas May Be Issued, Served, Or Enforced.**

The June 11 Subpoena may only be enforced against Ricco Jonas, in her official capacity as Program Manager of the NH PDMP, if, by 21 U.S.C. § 876, Congress authorized the U.S. Attorney General and, in turn, DEA to issue, serve, and enforce such subpoenas against the States, their sovereign agencies, and their officials acting in their official capacities. *See Comley*, 890 F.2d at 541.  Resolution of this issue requires the court to interpret 21 U.S.C. § 876 of the CSA.  This exercise begins with the plain language of the statute itself.

Section 876(a) permits the U.S. Attorney General to issue subpoenas "[i]n any investigation relating to his functions under this subchapter," including subpoenaing witnesses, compelling the attendance of witnesses, and securing the production of records that "the Attorney General finds relevant or material to the investigation."  Section 876(b) authorizes service of these subpoenas upon "natural persons" or upon "domestic or foreign corporation[s] or upon a partnership or other unincorporated association."  The State, its sovereign agencies, and its officials are not mentioned in Section 876(b) and no mode of service is specified as to them.  Section 876(c) authorizes enforcement of subpoenas only against "any person."   The CSA does not define the term "person."

There is a longstanding, well-established legal presumption that the term "person" is not ordinarily construed to include the State, its sovereign agencies, or its officers in their official capacities. *See, e.g.*, *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 (2000); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64 (1989); *United States v. Cooper*, 312 U.S. 600, 606-07 (1941).  "Particularly is this true where the statute imposes a burden or limitation, as distinguished from conferring a benefit or advantage." *Wilson v. Omaha Tribe*, 442 US 653, 667 (1979).  The United States Supreme Court "has been especially reluctant to read [the term] 'person' to mean the sovereign where . . . such a reading is 'decidedly awkward.'" *Int'l Primate Protection League v. Administrators of Tulane Ed. Fund*, 500 U.S. 72, 83 (1991) (quoting *Will*, 491 U.S. at 64). The presumption "may be disregarded only upon some affirmative showing of statutory intent to the contrary." *Vt. Agency of Nat. Res.*, 529 U.S. at 781.

Construing the term "any person" under 21 U.S.C. § 876(c) to include the State of New Hampshire, its sovereign agencies, and its officials acting in their official capacities

makes little sense in the context of the statute and is "decidedly awkward."  Section 876(b) specifies how service of process of subpoenas under the statute may occur.  For natural persons, service "may be made by personal delivery of the subpena to him." *Id.*  For artificial, corporate persons, service may be made "by delivering the subpena to an officer, to a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *Id.*   Section 876(b) makes no allowance for the service of subpoenas on sovereign entities, such as the States or the United States and their respective agencies or officials.  To read into the statute a separate authorization for service of process on those sovereign entities would effectively re-write the statute to enable the DEA to do something Congress did not authorize it do in the first place.

Moreover, Section 876(c) further states that, in enforcing the subpoena, the Attorney General "may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpenaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena."  States are not inhabitants, they do not "carry on business" as that phrase is traditionally used, and they are not typically "found" within a jurisdiction.  Moreover, the use of the pronoun "he" to refer to the term "person" militates against the term "person" including States and their sovereign agencies.  *Cf. Int'l Primate*, 500 U.S. at 80 (explaining that it "ma[de] little sense" to read a statute as referencing an agency rather than an individual as the antecedent to the pronoun "him").  Consequently, it is decidedly awkward to read the term "person" as used in 21 U.S.C. § 876(c) to include sovereign entities like the State or the United States.

A substantially similar result was reached in *In re Al Fayed*, 91 F. Supp. 2d 137 (D.D.C. 2000), where the federal district court held that the term "person," as used in 28

U.S.C. § 1782, did not include the sovereign and, therefore, by extension, did not include the

United States Central Intelligence Agency.  Section 1782 provided:

> (a)     The district court of the district in which a *person* resides or is found may
> order him to give his testimony or statement or to produce a document or other
> thing for use in a proceeding in a foreign or international tribunal .... The order
> may be made pursuant to a letter rogatory issued, or request made, by a foreign or
> international tribunal or upon the application of any interested *person* and may
> direct that the testimony or statement be given, or the document or other thing be
> produced, before a *person* appointed by the court. By virtue of his appointment,
> the *person* appointed has power to administer any necessary oath and take the
> testimony or statement.....
>
> A *person* may not be compelled to give his testimony or statement or to produce a
> document or other thing in violation of any legally applicable privilege.
>
> (b)     This chapter does not preclude a *person* within the United States from
> voluntarily giving his testimony or statement, or producing a document or other
> thing, for use in a proceeding in a foreign or international tribunal before any
> person and in any manner acceptable to him.

28 U.S.C. § 1782 (emphasis supplied).  In determining whether the term "person" included

the sovereign, the federal district court examined the "manner in which 'person' is used

throughout section 1782."  *In re Al Fayed*, 91 F. Supp. 2d at 140.  The court noted that the

statute used the pronouns "him" and "his" to refer to the term "person."  The court also was

aware of "nothing in the 'context, . . . subject matter, legislative history, [or] executive

interpretation' of section 1782 that would mitigate against the application of the general canon

that 'person' does not include the sovereign." *Id.* at 141 (appearing to quote *Wilson v. Omaha

Indian Tribe*, 442 U.S. 653, 667 (1979)).

    In this case, there is similarly nothing in the context, subject matter, legislative history,

or executive interpretation of the CSA that would counsel against application of the general

presumption that the term "person" in 21 U.S.C. § 876(c) does not include sovereigns.

Rather, there are numerous indications in the text and structure of the CSA confirming that

Congress did not intend the term "any person" in 21 U.S.C. § 876(c) to include the States, their sovereign agencies, and their officials in their official capacities.

First, while the CSA does not define the term "person," it expressly defines the term "State."  21 U.S.C. § 802(26).  The CSA then uses the terms "person" and "State" throughout its statutory text differently, including within statutory sections, and without any indication that the definitions overlap. *See, e.g.*, 21 U.S.C. § 873 (requiring the Attorney General to "cooperate" with "State . . . agencies concerning traffic in controlled substances" and delineating the ways in which he may so cooperate); 21 U.S.C. § 878 (authorizing "[a]ny officer or employee of . . . any State . . . designated by the Attorney General" to perform certain official functions like serving search warrants, subpoenas, and making seizures of property); 21 U.S.C. § 882(c) (authorizing a "State" to bring certain actions against "a person, entity, or Internet site" that violates specific statutory provisions).

Moreover, the CSA identifies persons who are required to register with the U.S. Attorney General. 21 U.S.C. § 822 (titled, "Persons required to register").  They include persons who manufacture, distribute, or dispense controlled substances. 21 U.S.C. § 822(a). The statutory section specifically exempts certain "persons" from registration, such as an agent or employee of a registered manufacturer, distributor, or dispenser, a common or contract carrier of warehouse man, and an ultimate user who possess the controlled substance under certain circumstances.  The States, their agencies and their officials are not mentioned in this section, which provides substantial context as to the types of "persons" who are the proper subjects of investigative administrative subpoenas under 21 U.S.C. § 876.

Second, 21 U.S.C. § 873, which appears in the same subchapter as 21 U.S.C. § 876, contemplates "cooperative arrangements" with the States, their sovereign agencies, and their

17

officials, not relationships where information can be demanded and seized by administrative subpoena.  In fact, the statute expressly commands the U.S. Attorney General to "cooperate with . . . State . . . agencies concerning traffic in controlled substances and in suppressing the abuse of controlled substances." 21 U.S.C. § 873(a).  In furtherance of this cooperation, the statute authorizes the U.S. Attorney General to do certain things like: "arrange for the exchange of information between governmental officials concerning the use and abuse of controlled substances," 21 U.S.C. § 873(a)(1); "cooperate in the institution and prosecution of cases in the courts of the United States and before the licensing board and courts of the several States," 21 U.S.C. § 873(a)(2); "assist State . . . governments in suppressing the diversion of controlled substances from legitimate medical, scientific, and commercial channels by . . . establishing cooperative investigative efforts to control diversion," 21 U.S.C. § 873(a)(6)(C); and "enter into contractual agreements with State . . . and local law enforcement agencies to provide for cooperative enforcement and regulatory activities under this chapter," 21 U.S.C. § 873(a)(7).

These provisions would, in significant part, be rendered meaningless if the U.S. Attorney General, through the DEA, could coerce the State, its sovereign agencies and its officials into action via investigatory administrative subpoena.  Consequently, 21 U.S.C. § 873(a)(6)'s cooperative provisions properly govern how the DEA should interact with the State and its agencies with respect to investigations (*i.e.*, through "cooperative" arrangements and investigative efforts) and belies the notion that the DEA can use an investigative administrative subpoena under 21 U.S.C. § 876 to forcibly take information from one of its sovereign partners.

Third, the CSA recognizes "State boards of pharmacy" like the New Hampshire Pharmacy Board, which operates, maintains, and controls the NH PDMP, as entities that should receive certain notifications that the U.S. Attorney General receives under 21 U.S.C. § 831(d) and makes no mention of the term being synonymous with the term "person" as used in the CSA generally.

Fourth, in addition to 21 U.S.C. § 873, other CSA provisions acknowledge cooperative federalism principles and seek to preserve State sovereignty and autonomy to the greatest extent possible.  For example, 21 U.S.C. § 882(c)(3) makes clear that the United States will not intrude on the sovereign rights of the States to conduct their own investigations and prosecute drug offenses.  In the same vein, 21 U.S.C. § 903 specifies a very narrow standard for when the CSA preempts State law: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."  This preemption standard is purposefully respectful of State sovereignty and autonomy, waives field preemption, and recognizes the States, their agencies, and their officials as partners in an ongoing national effort to combat abuse and diversion of controlled substances.[4]

The available legislative history also confirms that the CSA has always contemplated the States as partners in the national effort to combat abuse and diversion of controlled

---

[4] Indeed, New Hampshire, like other States, has enacted an extensive array of statutes in the area of controlled drugs in reliance on this special relationship. *See* RSA 318-B:1, *et seq.* [Controlled Drug Act].

substances, not as adversaries whose sovereign interests can be infringed by investigative administrative subpoena.   Specifically, when passing the Comprehensive Drug Abuse Prevention and Control Act of 1970, Title II of which is the CSA, the House Report described Title II of the Act's Administration provisions as follows:

> THE BILL SPECIFIES A NUMBER OF ADMINISTRATIVE AUTHORITIES FOR THE ATTORNEY GENERAL, AUTHORIZING RESEARCH AND EDUCATION PROGRAMS RELATING TO LAW ENFORCEMENT ASPECTS OF DRUG ABUSE, <u>COOPERATION WITH STATE AND LOCAL LAW ENFORCEMENT AUTHORITIES</u>, ADMINISTRATIVE INSPECTIONS, FORFEITURES, AND EXECUTION OF SEARCH WARRANTS, INCLUDING AUTHORITY TO ENTER PREMISES WITHOUT GIVING NOTICE OF AUTHORITY AND PURPOSE IF A JUDGE OR U.S. MAGISTRATE HAS AUTHORIZED SUCH ENTRY IN THE WARRANT AFTER DETERMINING THAT THERE IS PROBABLE CAUSE TO BELIEVE THAT—
>
> (1)   PROPERTY SOUGHT MAY AND, IF NOTICE IS GIVEN, WILL BE EASILY AND QUICKLY DESTROYED OR DISPOSED OF, OR
>
> (2)   THE GIVING OF SUCH NOTICE WILL IMMEDIATELY ENDANGER THE LIFE OR SAFETY OF THE EXECUTING OFFICER OR ANOTHER PERSON.

H.R. Rep. 91-1444 (upper case in original; emphasis added).

"In 1973, President Richard Nixon declared 'an all-out global war on the drug menace' and sent Reorganization Plan No. 2 to Congress." Drug Enforcement Administration, History, The DEA Years, 1970-1975, https://www.dea.gov/sites/default/files/2018-07/1970-1975%20p%2030-39.pdf (last visited Aug. 22, 2018).   Reorganization Plan No. 2 of 1973 established the DEA. U.S.C.A. REORG. PLAN 2 1973, https://www.gpo.gov/fdsys/pkg/USCODE-2010-title5/pdf/USCODE-2010-title5-app-reorganiz-other-dup96.pdf (last visited Aug. 22, 2018).   The Message of the President associated with the Reorganization Plan No. 2 of 1973 explains that one of the "major

responsibilities" of the DEA will include "full coordination and cooperation with State and local law enforcement officials on joint drug enforcement efforts." *Id.*

Thus, the text, structure, context, subject matter, and legislative history of the CSA all confirm that the federal government and States are intended to be cooperative partners in the struggle against the abuse and diversion of controlled substances. The collaboration envisioned by Congress bears no resemblance to the instant USDOJ effort to seize the records of its sovereign State agency partners via investigative administrative subpoena. That is to say, the *Vt. Agency* presumption that "any person" under § 876(c) *excludes* States, their sovereign agencies, and their officials is consistent with the text, the plain meaning, and the clearly manifested intent of the CSA. The USDOJ has put forward no persuasive analysis of its own to overcome that presumption. Accordingly, the presumption applies, Ricco Jonas, in her official capacity as Program Manager of the NH PDMP, is not a person within the meaning of 21 U.S.C. § 876, the June 11 Subpoena is invalid, and the instant Petition to enforce it must be dismissed.

The USDOJ's arguments to the contrary are unpersuasive, mischaracterize the cases it cites, and rely on cases interpreting completely different statutes. More importantly, the DEA engages in no persuasive statutory construction analysis of the CSA itself sufficient to overcome the presumption that the term "person" as used in 21 U.S.C. § 876 does not include the States, their sovereign agencies, or their officials in their official capacities.

Notably, the USDOJ attempts to re-write the United States Supreme Court's opinion in *Vermont Agency of Natural Resources* by claiming that the presumption referenced therein "is *most appropriately applied* when 'it is claimed that Congress has subjected the States to liability to which they had not been subject before.'" Memorandum (ECF Doc. # 1-1) at 9

(emphasis supplied) (quoting *Vt. Agency of Nat. Res.*, 529 U.S. at 780).   The purported

paraphrase – *most appropriately applied* – is invention and appears nowhere in the case.

Rather, the U.S. Supreme Court stated that "[t]he presumption is '***particularly applicable***

***where*** it is claimed that Congress has subjected the States to liability to which they had not

been subject before.'" *Id*. (emphasis supplied).   The artful paraphrase is unfaithful to the text

of *Vermont Agency* and offers no valid reason to disregard this "longstanding interpretive

presumption." *Id*.

The USDOJ then cites to case law that has nothing whatsoever to do with the CSA or

the reach of the § 876 subpoena power.   Rather, those cases concern other laws, like Federal

Rule of Criminal Procedure 17(c), Federal Rule of Civil Procedure 45 and Title VII.   These

laws arise in materially different contexts than the CSA and perform materially different

functions.   An investigative administrative subpoena issued under 21 U.S.C. § 876 is not

issued in the same context or for the same purpose as a subpoena issued under Federal Rule of

Criminal Procedure 17(c) or Federal Rule of Civil Procedure 45.   Consequently, cases like

*United States v. Nixon*, 418 U.S. 683 (1974), *United States v. Juvenile Male I*, 431 F. Supp.2d

1012 (D. Ariz. 2006), *Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2015), *Yousuf v.

Samantar*, 451 F.3d 248 (D.C. Cir. 2006) are not helpful in determining the meaning of 21

U.S.C. § 876.   Moreover, in *EEOC v. Illinois State Tollway Auth.*, 800 F.2d 656 (7th Cir.

1986), a state agency was a "person" subject to the EEOC's administrative subpoena power

because "Title VII's definitional provision defines 'person' to include governments,

government agencies, and political subdivisions." *Id*. at 658 n. 2.

In short, the USDOJ offers no persuasive analysis that would justify departing from

the longstanding, well-settled presumption that the term "person" as used in 21 U.S.C. § 876

does not include the States, their sovereign agencies, and their officials, including NH PDMP Program Manager Ricco Jonas.

**E. Even If the CSA Authorizes Subpoenas Against The State, the DEA Must Still Overcome the Fourth Amendment Proscription Against Government Seizure, Without Probable Cause, of Information in Which There is a Fourth Amendment-based Reasonable Expectation of Privacy.**

If the CSA's collaborative scheme were found to contemplate administrative subpoenas visited upon the DEA's state sovereign agency partners, then the Court's analysis must turn to the Fourth Amendment to determine whether patients have a reasonable expectation of privacy in the content of their drug prescriptions, so that they must not be disclosed without court review and a finding of probable cause. The government may use an administrative subpoena to seize records *only if* its target lacks a Fourth Amendment-based reasonable expectation of privacy in their content. *In re Gimbel*, 77 F.3d 593, 564 (2d Cir. 1996) (the Fourth Amendment does not permit the use of an administrative subpoena where the "respondent maintains a reasonable expectation of privacy in the materials sought by the subpoena."); *Shea v. Office of Thrift Supervision*, 934 F.2d 41, 45 (3rd Cir. 1990).

Ricco Jonas, as Program Manager for this State's PDMP, has standing to assert such Fourth Amendment privacy rights as this State's residents may have in their PDMP-kept prescription drug information. The *parens patriae* doctrine establishes an exception to the customary rules of standing – that is, "in recognition of the special role that a State plays in pursuing its quasi-sovereign interests," *Estados Unidos Mexicanos v. Austin J. DeCoster Co.*, 229 F.3d 332, 335 (1st Cir. 2000), which include "the health and well-being – both physical and economic – of [a substantial segment of] its residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). That the New Hampshire PDMP is a measure aimed

at safeguarding and advancing the "health and well-being" of a "substantial segment" of this State's residents is beyond dispute.[5]  *See* Ricco Jonas Decl., Exhibit B ¶¶ 1-4.

That said, the legislation establishing the New Hampshire PDMP demonstrates that New Hampshire residents have a reasonable expectation of privacy in their PDMP-kept prescription drug information. *See* RSA 318-B:35, I(a)(3) (requiring that law enforcement personnel first obtain a **probable cause order** in order to obtain PDMP-kept prescription drug data); *see also*, RSA 318-B:34, I [Confidentiality] (PDMP data "is **confidential**, is not a public record, and is **not subject to discovery, subpoena, or other means of legal compulsion for release**, except as provided …" ) (emphasis supplied); RSA 318-B:34, II [Confidentiality] ("The Board shall establish and maintain procedures to ensure the **privacy** and confidentiality of patients and **patient information**.") (emphasis supplied).

---

[5] The legislation establishing the New Hampshire PDMP includes a "Statement of Intent," which states, in part:

> The general court believes that a controlled drug prescription health and safety program that fully complies with all state and federal Health Insurance Portability and Accountability Act (HIPAA) privacy and security laws and regulations should be established as a tool to improve medical treatment.   *** [It] will reduce patient morbidity and mortality associated with controlled drugs by providing a secure program through which the prescriber and dispenser may access information on a patient's controlled drug prescription history.

RSA 318-B:31-41.

> Likewise, citing literature of the National Alliance for Model State Drug Laws, the DEA points out that State PDMPs

> 1. support access to legitimate medical use of controlled substances,
> 2. identify and deter or prevent drug abuse and diversion,
> 3. facilitate and encourage the identification, intervention with and treatment of persons addicted to drugs,
> 4. inform public health initiatives through outlining of use and abuse trends, and
> 5. educate individuals about PDMPs and the use, abuse and diversion of and addiction to prescription drugs."

*See* https://www.deadiversion.usdoj.gov/faq/rx_monitor.htm (last accessed August 21, 2018).

Federal courts have ruled that patients have a Fourth Amendment-based expectation of privacy in their prescription drug records.  *See*, *e.g.*, *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) (finding "a constitutional right to privacy in [patients'] prescription drug records"); *Doe v. Southeastern Pennsylvania Transportation Authority*, 72 F.3d 1133, 1138 (3d Cir. 1995) (same).  There exists only one published decision addressing whether patients have a Fourth Amendment-based reasonable expectation of privacy in drug prescription records that are kept by a State PDMP.  In *Oregon Prescription Drug Monitoring Program v. United States Drug Enforcement Agency*, 998 F. Supp.2d 957, 966 (D. Or. 2014), the District Court "easily concluded" that they do.[6]  The Ninth Circuit reversed the decision of the District Court on account of the lack of standing of the intervenors, including the American Civil Liberties Union, *see Oregon Prescription Drug Monitoring Program v. United States Drug Enforcement Administration*, 860 F.3d 1228 (9th Cir. 2016), but concluded that "th[e] result preserve[d] [the State of] Oregon's option to contest [the administrative] subpoena," ***as the State of New Hampshire does here***, "and thus trigger the enforcement procedure described in § 876(c), ***a critical safeguard in light of the particularly important privacy interest implicated here***."  *Id*. at 1236-37 (emphasis supplied).

Simply put, the Fourth Amendment-based reasonable expectation of privacy held by persons in New Hampshire in their PDMP-kept prescription drug information overcomes the June 11 Subpoena.  *See Gimbel*, 77 F.3d at 564.  The DEA cannot obtain those records absent a showing of probable cause, which the USDOJ has not made in this case.  Accordingly, the Petition should properly be denied on Fourth Amendment grounds as well.

---

[6] The District Court reached this issue because the question of whether the Attorney General's § 876 subpoena power extended to the DEA's sovereign State agency partners was not raised.

**<u>CONCLUSION</u>**

In sum, the DEA's Petition should be denied.  The USDOJ has failed to meet its *prima facie* burden to enforce the subpoena.  The DEA never served a subpoena on Ricco Jonas in her personal capacity.  Ricco Jonas in her personal capacity does not have possession, control, or lawful access to the information the June 11 subpoena seeks.  Congress did not authorize the DEA to issue, serve, or enforce subpoenas against sovereign State agencies and their officials under 21 U.S.C. § 876.  Moreover, New Hampshire residents have a reasonable Fourth Amendment-based expectation of privacy in their NH PDMP-kept prescription information which overcomes the administrative subpoena, with the result that a showing of probable cause is required to obtain the documents specified therein.  No such showing has been made in this case.  Accordingly, for all the foregoing reasons, the DEA's Petition should be denied.

<div style="margin-left:50%">

Respectfully submitted,

MICHELLE RICCO JONAS

By her attorney,

GORDON J. MACDONALD
ATTORNEY GENERAL

</div>

Date:  September 4, 2018            By: /s/ Anthony J. Galdieri
                                                 Anthony J. Galdieri, Bar # 18594
     Senior Assistant Attorney General
     Lawrence M. Edelman, Bar # 738
     Attorney, Civil Bureau
     New Hampshire Dept. of Justice
     33 Capitol Street
     Concord, NH 03301
     (603) 271-3650
     anthony.galdieri@doj.nh.gov
     lawrence.edelman@doj.nh.gov

## Certificate of Service

I hereby certify that a copy of the foregoing Objection to Petition to Compel Compliance with Administrative Subpoena was served this 4th day of September, 2018, on all counsel of record, via the ECF System.

/s/  Lawrence M. Edelman
Lawrence M. Edelman