**ATTORNEY GENERAL**
**DEPARTMENT OF JUSTICE**

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397



EXHIBIT **A-4**



GORDON J. MACDONALD
ATTORNEY GENERAL

JANE E. YOUNG
DEPUTY ATTORNEY GENERAL

July 12, 2018

Diversion Investigator Gabrielle Stern
Drug Enforcement Administration
Manchester District Office
324 South River Road
Bedford, NH 03110

Dear Investigator Stern,

The New Hampshire Attorney General's Office represents Michelle Ricco-Jonas, Program Manager for the New Hampshire Prescription Drug Monitoring Program ("PDMP"). The purpose of this letter is to provide you with a response to the June 13, 2018 subpoena you issued to Ms. Ricco-Jonas.

On March 5, 2018, you served an administrative subpoena, pursuant to 21 U.S.C. § 876(a) of the Controlled Substances Act ("CSA"), on the PDMP. The subpoena requested that the PDMP "provide any and all records regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, being maintained by the New Hampshire Prescription Drug Monitoring Program from February 28, 2016 through February 28, 2018."

On or about April 9, 2018, we objected to the subpoena in writing. In our objection, we noted that the CSA does not authorize the DEA to subpoena States or their sovereign agencies. We stated that 21 U.S.C. § 876(b) of the CSA authorizes service of subpoenas only upon natural persons or upon "domestic or foreign corporation[s] or upon a partnership or other unincorporated association[s]." We further explained that Section 876(b) does not mention the State or its sovereign agencies, that the general rule of statutory construction is that the term "person" does not include the State or its sovereign agencies or actors, and that the CSA, as a whole, does not indicate a Congressional intent to include the State or its sovereign agencies within the meaning of the term "person" as used in the statute. Thus, we determined that, under Section 876, the DEA had no authority to issue or enforce a subpoena against a State or its sovereign agencies. We further noted that, if the DEA desires the information sought in the subpoena, it would have to comply with the requirements in RSA 318-B:34 or RSA 318-B:35 to obtain it, consistent with the CSA's emphasis on cooperation with the States and their agencies

On June 13, 2018, you served a second administrative subpoena pursuant to 21 U.S.C. § 876(a) of the CSA on Michelle Ricco-Jonas, in her official capacity as Program Manager for the

1

New Hampshire PDMP. This second subpoena requests Ms. Ricco-Jonas to "provide any and all records regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, being maintained by the New Hampshire Prescription Drug Monitoring Program from February 28, 2016 through present day." The subpoena requests the documents be delivered to the DEA's Manchester District Office by July 13, 2018.

Upon review of the June 13, 2018 subpoena and the applicable law, Ms. Ricco-Jonas, through counsel, objects to providing the DEA with the information requested in the subpoena for at least the following reasons.

### I. The CSA Does Not Authorize The DEA To Subpoena States, Their Sovereign Agencies, or State Officials Working in their Official Capacity for those Agencies.

The New Hampshire Pharmacy Board is a sovereign agency of the State of New Hampshire. RSA 318-B:2; *see* RSA 541-A:1, II ("'Agency' means each state board, commission, department, institution, officer, or any other state official or group, other than the legislature or the courts, authorized by law to make rules or to determine contested cases."); RSA 541-B:1, I ("'Agency' means all departments, boards, offices, commissions, institutions, other instrumentalities of state government, including but not limited to the Pease development authority, division of ports and harbors, the New Hampshire housing finance authority, the New Hampshire energy authority, the community college system of New Hampshire, . . . and the general court, including any official or employee of same when acting in the scope of his or her elected or appointed capacity, but excluding political subdivisions of the state.").

The New Hampshire Pharmacy Board operates, maintains, and oversees the PDMP. The PDMP is not a separate legal entity; it is a program established by RSA 318-B:31-41. *See* RSA 318-B:31, I ("'Board' means the pharmacy board, established in RSA 318:2."); RSA 318-B:32, I ("The board shall design, establish, and contract with a third party for the implementation and operation of an electronic system to facilitate the confidential sharing of information relating to the prescribing and dispensing of schedule II-IV controlled substances, by prescribers and dispensers within the state.").

Ms. Ricco-Jonas is a State official employed by the Office of Professional Licensure and Certification, the state agency that is an umbrella organization for most of the state's licensing boards. RSA 310-A:1-c, II ("Every classified or unclassified state employee position authorized in the boards, councils, and commissions under RSA 310-A:1-a shall be transferred to the office of professional licensure and certification and subject to the supervisory authority of the executive director."); RSA 310-A:1-a(w) (listing the New Hampshire Pharmacy Board). In her official capacity with the State, Ms. Ricco-Jonas serves as the Program Manager of the PDMP. The June 13, 2018 subpoena has been directed to Ms. Ricco-Jonas in her official capacity as Program Manager of the PDMP and seeks to compel her to provide to the DEA certain information out of the PDMP that is expressly protected by State statute and that would require Ms. Ricco-Jonas to commit a crime under State law. *See* RSA 318-B:36. The CSA does not empower the DEA to do this.

2

21 U.S.C. § 876 of the CSA does not provide the DEA with the authority to subpoena a State, its sovereign agencies, or its officials serving in their official capacities like Ms. Ricco-Jonas as a matter of law.

To begin with, Section 876(b) authorizes service of subpoenas only upon natural persons or upon "domestic or foreign corporation[s] or upon a partnership or other unincorporated association." The State, its sovereign agencies, and its officials are not mentioned in Section 876(b).

Section 876(c) authorizes enforcement of subpoenas only against "any person." The CSA does not define the term "person." However, the general rule of statutory construction is that the term "person" is not ordinarily construed to include the State, its sovereign agencies, or its officers acting in their official capacities. *See, e.g.*, *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000) ("We must apply to this [statutory] text [of 31 U.S.C. § 3729(a)] our longstanding interpretive presumption that 'person' does not include the sovereign."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 275 (1947) ("In common usage that term ['person'] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so."); *AG of Can. v. RJ Reynolds Tobacco Holdings*, 103 F. Supp. 2d 134, 147 (N.D.N.Y. 2000) ("As a general rule, the term 'person' does not include the sovereign."); *see also* 1 U.S.C. § 1 (defining the term "person" to include corporate entities, but not to include the State or its sovereign agencies or officers).

The United States Supreme Court confronted a similar statutory construction issue in *Will v. Mich. Dept. of State Police*, wherein it held as follows:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under §1983.

491 U.S. 58, 70 (1989) (citations omitted). *See also Negron-Almeda v. Santiago*, 528 F.3d 15, 27 n.2 (1st Cir. 2008) ("Claims against a state official in his official capacity are treated as claims against the state.") (citations omitted); *Baldi v. MacKenzie*, No. 04-158-SM, 2004 U.S. Dist LEXIS 14212, at 85 (D.N.H. July 26, 2004) ("Where, as here, all of the claims are made against a government official acting purely in a representative role, the suit must be regarded as one against the sovereign.") (quotations omitted).

The text and context of the CSA support interpreting the term "person" in 21 U.S.C. § 876 to exclude the State, its sovereign agencies, and its officials acting in their official capacities for at least several reasons.

First, while the CSA does not define the term "person," it expressly defines the term "State" to mean "a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States." 21 U.S.C. § 802(26). The CSA then uses the terms "person" and "State" throughout its statutory text differently, including within statutory sections,

3

and without any indication that the definitions overlap. *See, e.g.*, 21 U.S.C. § 882(c) (authorizing a "State" to bring certain actions against "a person, entity, or Internet site" that violates specific statutory provisions). The term "State" or "State of the United States" is typically construed to include State agencies and State officials. *See Will*, 491 U.S. at 71 ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *see also Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity regardless of the relief sought.") (internal quotations omitted).

Second, the CSA recognizes "State boards of pharmacy" as entities that should receive certain notifications that the United States Attorney General receives under 21 U.S.C. § 831 and makes no mention of that term being synonymous with the term "person" as used in 21 U.S.C. § 876 or in the CSA generally.

Third, 21 U.S.C. § 873, which appears within the same subsection as 21 U.S.C. § 876, contemplates "cooperative arrangements" with the States, not relationships where information can be demanded by subpoena. Indeed, the statute expressly directs the United States Attorney General to "cooperate with . . . State . . . agencies concerning traffic in controlled substances and in suppressing the abuse of controlled substances." 21 U.S.C. § 873(a). In furtherance of this cooperation, the statute authorizes the Attorney General to do certain things like: (1) "*arrange for the exchange of information* between governmental officials concerning the use and abuse of controlled substances"; (2) "*cooperate in the institution and prosecution of cases* in the courts of the United States and before the licensing boards and courts of the several States"; and (3) "enter into contractual agreements with State . . . and local law enforcement agencies to provide for *cooperative enforcement and regulatory activities* under this chapter." (emphasis added). These provisions would, in significant part, be rendered meaningless if the United States Attorney General could simply coerce a State, its sovereign agencies, or its officials into action via subpoena.

Fourth, in addition to 21 U.S.C. § 873, other CSA provisions acknowledge cooperative federalism principles and seek to preserve State sovereignty and autonomy, free of coercion or preemption by the federal government. For example, 21 U.S.C. § 882(c)(3) specifies that, in authorizing States to bring certain civil actions under its provisions, "nothing in this chapter shall prevent an attorney general of a State from exercising the powers conferred on the attorney general of a State by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses of or the production of documentary or other evidence."

21 U.S.C. § 903 also takes care to specify a very narrow standard for when the CSA preempts State law: "No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together." This preemption standard is expressly and purposefully respectful of State sovereignty and autonomy, much like the cooperation provisions of 21 U.S.C. § 873.

4

Thus, the text and context of the CSA itself reveal that the term "person" as used in 21 U.S.C. § 876 does not, and was never meant to, extend to the States, their sovereign agencies, or their officials acting in their official capacities. Rather, the unambiguous text of the CSA reveals a statutory scheme that is highly protective of individual State sovereignty and autonomy and authorizes the United States Attorney General, through the DEA or otherwise, only to cooperate with the States, not to coerce them into action via subpoenas issued to State officials.

Accordingly, for at least all of the above reasons, the June 13, 2018 subpoena is *ultra vires*, is not for a proper purpose authorized by Congress, and seeks information that is not within the DEA's authority to obtain via subpoena under 21 U.S.C. § 876. *See, e.g., United States v. Comley*, 890 F.2d 539, 541 (1st Cir. 1989) ("In general, an agency subpoena is enforceable if it is for a proper purpose authorized by Congress, the information sought is relevant to that purpose and adequately described, and statutory procedures are followed in the subpoena's issuance."); *Reich v. Sturm, Ruger & Co.*, 903 F. Supp. 239, 244 (D.N.H. 1995) (observing, among other things, that one of the limitations on administrative subpoenas is that the subpoena must be within the agency's authority). Moreover, under the plain language of 21 U.S.C. § 876(c), the DEA lacks the authority to enforce the June 13, 2018 subpoena against Ms. Ricco-Jonas. Ms. Ricco-Jonas will therefore not be providing records pursuant to it.

## II. If The DEA Desires The Information Sought In Its June 13, 2018 Subpoena, It Will Have To Comply With RSA 318-B:34 Or RSA 318-B:35 To Obtain It.

The CSA contemplates voluntary, cooperative relationships with the States and their sovereign entities. Consequently, State law provisions that either wholly forbid the DEA from obtaining information collected by a State or one of its sovereign agencies or attach cooperative efforts and other procedures to that process are not, as a matter of law, preempted by 21 U.S.C. § 876. While we understand that at least two other courts have held that similar state statutes are preempted by 21 U.S.C. § 876, the question of the DEA's authority to issue and enforce a subpoena against a State, its sovereign agencies, or its officials acting in their official capacities under 21 U.S.C. § 876 was never addressed in those cases. *Or. Prescription Drug Monitoring Program v. United States DEA*, 860 F.3d 1228 (9th Cir. 2017); *DEA v. Utah Department of Commerce*, No. 16-CV-611, 2017 U.S. Dist. LEXIS 118470 (D. Utah July 27, 2017). Thus, we do not view those cases as controlling or dispositive and would suggest that those cases were wrongly decided.

Instead, for the reasons given in Section I above, subpoenas issued against the States, their sovereign agencies, and their officials acting in their official capacities under 21 U.S.C. § 876 are *ultra vires*, are not for a proper purpose authorized by Congress, are not within the DEA's authority, and are not enforceable under the plain language of 21 U.S.C. § 876(c). The CSA is grounded in principles of federalism and calls for cooperative arrangements with the States, not relationships where information can be demanded by subpoena. Accordingly, the CSA does not preempt any of the provisions of RSA 318-B:34 or RSA 318-B:35 and, if the DEA desires information contained in the PDMP, it must work cooperatively through those State statutes to obtain it.

5

In sum, Ms. Ricco-Jonas will not be supplying the information requested in its June 13, 2018 subpoena. That subpoena is legally invalid, is not authorized by the CSA, and cannot be enforced against New Hampshire, its sovereign agencies like the New Hampshire Pharmacy Board, or its officials acting in their official capacities.

If you have any questions or concerns, please feel free to contact either myself or Assistant Attorney General Tom Broderick.

Sincerely,

Anthony Galdieri
Assistant Attorney General
Civil Bureau

Cc: Tom Broderick, Assistant Attorney General, New Hampshire Department of Justice
Michael Bullek BSP, R.Ph, Administrator/Chief of Compliance, New Hampshire Board of Pharmacy
Claire M. Brennan, Diversion Program Manager, U.S. Department of Justice