UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE, )<br>                                                       )<br>    Petitioner,                          )<br>                                                       )<br>        v.                             )<br>                                                         )<br>MICHELLE RICCO JONAS,         )<br>                                                       )<br>    Respondent.               )<br>_____)| No. 18-mc-00056-LM |

### THE UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF
### ITS PETITION TO COMPEL COMPLIANCE WITH ADMINISTRATIVE SUBPOENA

Michelle Ricco-Jonas' objection attempts to make the simple complicated. Nevertheless, the essentials remain the same: Ricco-Jonas is a person who received a DEA subpoena ordering her to provide documents over which she has possession, custody or control. She refused to comply with that subpoena for no justified reason. Section 876(c) empowers this Court to enforce that subpoena by ordering Ricco-Jonas to produce the requested documents.

The underlying facts are straightforward. On June 11, 2018, the United States Drug Enforcement Administration (DEA) issued a subpoena to Ricco-Jonas, the Program Manager of the New Hampshire PDMP, seeking certain PDMP records. The State Attorney General accepted service of the subpoena on Ricco-Jonas' behalf. Ricco-Jonas, through the State Attorney General, then replied that Ricco-Jonas was refusing to comply with the subpoena, and the United States has filed a petition to enforce compliance under 21 U.S.C. § 876(c). DN 1.

Ricco-Jonas' primary argument for refusing to comply is as follows: (1) under 21 U.S.C. § 876(c), this Court has jurisdiction to enforce a subpoena issued to any "person;" (2) the subpoena issued to Ricco-Jonas was issued to her in her official capacity; (3) an official capacity

action is the same as an action against the State; (4) the State is not a "person" under § 21 U.S.C. § 876(c); (5) therefore this Court cannot enforce the subpoena issued to Ricco-Jonas.[1]

Ricco-Jonas focuses her argument on a claim that the subpoena was issued to her "solely in her official capacity as Program Manager for the PDMP, not in her personal capacity."  DN 7 at 8.  The concept of official versus personal capacity is an important one in the context of categorizing lawsuits filed against government officials because different remedies are available and immunities apply depending on the applicable categorization.  Lewis v. Clarke, ___ U.S. ___, 137 S. Ct. 1285, 1291 (2017).  A subpoena, however, is not a lawsuit; it is a request that a person with possession, custody or control of relevant documents produce them.  In the federal system, subpoenas issue routinely to state employees for the production of records.  United States v. Juvenile Male 1, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006).  Thus, Ricco-Jonas' primary premise that the subpoena was served on her because she is a state official is not meaningful; she was a person served with a subpoena because she has control over the requested documents.

Ricco-Jonas also contends that she cannot comply with the subpoena because she does not have access to the documents in her personal capacity.  Again, Ricco-Jonas' attempt to draw a non-existent distinction.

As already mentioned, Ricco-Jonas must comply with the subpoena so long as she has possession, custody, or control over the requested documents.  Control exists for purposes of producing records when a party has the legal right to obtain documents.  Rosie D. v. Romney,

---

[1] Ricco Jonas has raised an argument in her objection that was not raised in the letter refusing to comply with the subpoena, namely that the DEA has not shown that the investigation is for an appropriate purpose.  Attached as Exhibit A is the Declaration of DEA Diversion Investigator Gabrielle Stern (Stern Dec.) which sets forth the nature of the investigation for which the subpoena to Ricco-Jonas was issued.

2

256 F. Supp. 2d 115, 119 (D. Mass. 2003). "Legal ownership or actual physical possession is not required; documents are considered to be under a party's control when that party has the right, authority, or ability to obtain those documents upon demand." Green v. Fulton, 157 F.R.D. 136, 142 (D. Me. 1994). "[T]he word 'control' is broadly construed in application." Addamax Corp. v. Open Software Foundation, Inc., 148 F.R.D. 462, 464 (D. Mass. 1993).

Ricco-Jonas does not dispute her power to obtain the records. She says instead that she has this power because of her public employment. DN 7 at 6, 9, 12, 13. Surely that is so, but she remains a person with control over the requested documents. That is what matters.[2] United States v. 2121 Celeste Road, 307 F.R.D. 572, 590-91 (D.N.M. 2015) ("If a party is going to subpoena documents from the government, they need to subpoena the person who has possession, custody and control over the documents . . .") (emphasis supplied).

Ricco-Jonas also says that state law does not allow her to turn over the records sought because of statutory limitations on the circumstances under which she can produce the documents, namely that the New Hampshire PDMP statute requires that there be a search warrant before disclosure can be made for law enforcement purposes. DN 7 at 6. But that

---

[2] Ricco-Jonas attempts to make an issue out of the United States Attorney's request that the State Attorney General accept service of the subpoena for her. DN 7 at 3, Ricco-Jonas suggests that the United States had the opportunity to tell the State Attorney General at that time that it was seeking to serve the subpoena on Ricco-Jonas in her personal capacity but did not do so. Id. at 10. Ricco-Jonas further suggests that this was important information and that withholding it was somehow deceptive. Id. at 3. It was neither. The distinction between personal and official capacity subpoenas was first put forward by Ricco-Jonas when she responded to the subpoena by refusing to comply. But, as discussed above, in the United States' view, this is not a meaningful distinction. Ricco-Jonas received the subpoena because she is a person with control over the relevant documents. The United States merely offered the State Attorney General the opportunity to accept service for ease of administering the matter and as a courtesy to avoid confronting Ricco-Jonas with in-hand service. The United States further believed at that time that the State Attorney General would be representing Ricco-Jonas in this matter, a belief that turned out to be accurate.

limitation does not apply when the documents are requested based on a federal authority because under the Supremacy Clause the state-law restriction is preempted. Oregon Prescription Drug Monitoring Program v. DEA, 860 F.3d 1228 (9th Cir. 2017). The DEA subpoena is authorized by federal law and therefore Ricco-Jonas must comply with it notwithstanding any state-law limitations.[3] United States v. Golden Valley Electric Assn., 689 F.3d 1108, 1115 (9th Cir. 2012) ("The Supreme Court has refused to require that an agency have probable cause to justify the issuance of an [administrative] subpoena.") (citing, United States v. Powell, 379 U.S. 48 (1964)).

In support of her claim that the subpoena was issued to the State, Ricco-Jonas also emphasizes the nature of the material sought in the subpoena and says that this is important because the DEA is seeking State records. Based on this, she claims that the subpoena enforcement proceeding is really an action against the State of New Hampshire because the subpoena asks Ricco-Jonas to turn over state records that are in her control. Contrary to Ricco-Jonas' suggestion, the legal action here (i.e., the petition) does not seek relief from the State; it seeks an order from this Court compelling Ricco-Jonas to comply with the DEA's command for her to turn over documents that are in her control under the threat that she will be in contempt of court if she fails to comply. See Ott v. City of Milwaukee, 682 F.3d 552, 556 (7th Cir. 2012) ("No state sovereign immunity issues are triggered by [a Rule 45 subpoena to the correct employee of a state agency] because no ultimate relief is being sought from" the state agencies).

---

[3] The notion that Ricco-Jonas would be committing a state crime by complying with the subpoena is also incorrect. Ricco-Jonas would not be committing an unauthorized act by complying with supreme federal law nor would she be using privileged information for confidential or personal gain. Further, the limitation on disclosing PDMP data obviously does not apply when the privacy provision in the PDMP state law on which Ricco-Jonas relies is inoperative in the face of valid a federal subpoena.

4

In Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 692-93 (1982), the lead opinion concluded that an action seeking an order against a state employee to deliver property to a federal court that was alleged to be withheld unlawfully was an action against the state official, not the State itself. As the Court stated in reaching that conclusion, the case remained an action against the official, even though the State elected to defend on behalf of its agent. Id.

Salvors was relied on by the District of Connecticut as support in an analogous circumstance to this case. Jackson v. AFSCME, 3:07CV0471, 2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008). There, a party served a subpoena on a state official to produce state documents. The official argued that she was immune from complying with the subpoena because the action was in fact an action against the State, and therefore Eleventh Amendment immunity precluded the federal court from enforcing the subpoena. Id. In rejecting that argument, the Jackson court noted that Salvors approved an action to enforce process on a state official to secure delivery of property allegedly withheld by him unlawfully in the name of the State. The court then stated that the analogy to a subpoena enforcement proceeding was "apparent" where all that was being sought was the "inspection and copying of state records." Id.; see also Laxalt v. McClatchy, 109 F.R.D. 632, 634-35 (D. Nev. 1986).

In this regard, the United States, in its opening memorandum, cited multiple cases rejecting Eleventh Amendment immunity claims brought by state officials who had received federal subpoenas. If Ricco-Jonas' claim was correct that a petition to enforce a subpoena issued to a state employee was an official capacity action and thus an action against the State, these cases should have come out the other way. Kentucky v. Graham, 473 U.S. 159, 165 (1985). That they did not substantially undermines Ricco-Jonas' argument. Thomas v. Hickman, CV F 06-0215, 2008 WL 782476, at *3 (E.D. Ca. Mar. 20, 2008) (stating that it was an "important

5

distinction" that subpoenas were served "on individuals" [various state agency employees] and not the state agency directly).

The bottom line is this: The DEA is authorized by federal law to subpoena the "production of records," which the DEA "finds relevant or material to the investigation." 21 U.S.C. § 876(a). Pursuant to this authority, the DEA issued a subpoena to Ricco-Jonas, a person with control over PDMP records. Stern Dec., ¶ 3. She refused to comply for reasons that do not justify her refusal. This Court has the authority to enforce the subpoena in these circumstances. 21 U.S.C. § 876(c). Therefore, this Court should order Ricco-Jonas to produce the requested records.

Ricco-Jonas' argument about Article III jurisdiction fails. The United States (as described above), issued a subpoena to Ricco-Jonas and she is a "person" who refused to comply, thereby giving this Court the authority to order compliance. Ricco-Jonas has argued that the subpoena was actually issued to the State of New Hampshire, even though it was addressed to her, and that this somehow deprives the Court of the authority to enforce the subpoena.

While the United States disagrees with Ricco-Jonas' position that the State was subpoenaed by the DEA, the United States argues that, even if this Court accepts Ricco-Jonas' assertion to this effect, it can still enforce the subpoena because the State is a "person" for purposes of § 876(c). The United States is thus not requesting an advisory opinion; it is requesting an order compelling compliance with the DEA subpoena that was issued to Ricco-Jonas. The label "official-capacity" being bandied about by Ricco-Jonas to argue against jurisdiction and enforcement is hers and, in the United States' view, is irrelevant to the pending matter. In any event, it certainly has nothing to do with the Article III case or controversy

requirement. The pending matter is a real dispute about a real subpoena to which the recipient has not complied. It is certainly a controversy that is ripe for adjudication. Knox v. Service Employees International Union, 567 U.S. 298, 307-08 (2012) (An Article III case exists "as long as the parties have a concrete interest, however small, in the outcome of the litigation."). Arguing in the alternative is common in federal litigation and does not limit this Court's ability to decide the real controversy before it.

Turning to the United States' alternative argument for enforcement, Ricco-Jonas does not seriously address the United States' argument for why "person" as used in § 876(c) should include a state agency, assuming arguendo that the subpoena here was issued to a state agency. Ricco-Jonas provides nuanced discussion of the CSA's general text and identifies its basic cooperative thrust between federal and state authority. But it is apparent that the language of § 876(c) was not original drafting by Congress when it wrote the CSA. Rather, it is cut-and-paste language that Congress has used, since at least the 1930s, for many provisions that permit federal courts to enforce administrative subpoenas.

The limited significance of Ricco-Jonas' parsing of other CSA language becomes even more apparent by comparing § 876(a) with § 876(b) and § 876(c), the CSA subpoena provisions at issue here. Section 876(a) is the provision that authorizes the DEA to use subpoenas. It uses language specific to the CSA (referencing "listed chemicals" and the like) and does not use the word "person" at all; rather it speaks of subpoenas issued to "witnesses." Sections 876(b) and (c), on the other hand, come verbatim from other statutes. E.g., 21 U.S.C. § 968 (using the same language as § 876(b) but enacted almost 20 years earlier) and DN 1 at 10 (citing the numerous

identical provisions to § 876(c)).[4]  These are the provisions that use the word "person," which Ricco-Jonas says does not include a state agency.  Given this drafting history, Ricco-Jonas' focus on the specific language of other CSA provisions and the general cooperative thrust of the CSA do not appear to have been the animating forces in Congress choosing the word "person" when enacting §§ 876(b) and (c).

Since Congress recycled language from other provisions in the disputed sections of the CSA, the better way to construe the use of "person" in the CSA subpoena provisions is to read it in pari materia with the use of the word "person" in other long-standing provisions that authorize the use and enforcement of subpoenas.  It is for this reason that the United States points to Rule 45 of the Federal Rule of Civil Procedure, which has long authorized subpoenas on "persons."  Person has been construed in that provision to mean that subpoenas can be issued to state agencies.  Ott, 682 F.3d at 556; Ghandi v. Police Dep't. City of Detroit, 74 F.R.D. 115 (E.D. Mich. 1977) (stating that F.B.I. was the "person" to whom plaintiff's subpoena was directed).

Ott's rationale was based, in substantial part, on the notion that state agencies have "no established prerogative" to avoid receiving subpoenas.[5]  Ricco-Jonas relies for her argument

---

[4] The sheer number of statutes that use the CSA subpoena enforcement language at issue here demonstrates the startling breadth of Ricco-Jonas' argument.  As already mentioned, in the federal system the use of subpoenas to state employees to obtain state records is commonplace.  Supra at 2.  If Ricco-Jonas' argument about "person" is correct, that would mean that numerous federal subpoena statutes would not allow the federal agencies to obtain state documents that are important to ongoing federal matters and investigations. That would be a significant limitation on the ability of federal agencies to perform the tasks assigned to them by Congress.

[5] Importantly for the United States' primary argument (i.e., the subpoena was issued to Ricco-Jonas and not the State), Ott said that allowing a state agency to be subpoenaed directly violated no established prerogative because the party issuing the subpoena could have demanded the same documents by issuing a subpoena to the correct employee in each agency.  Thus, because the party issuing the subpoena could have demanded the same documents by sending the subpoena to the correct person at the agency, the state agency would suffer no harm by receiving the subpoena directly.

8

principally on the legal presumption that the word "person" typically does not include the sovereign. But that presumption is "particularly applicable where it is claimed that Congress has subjected the States to liability to which they had not been subject before." Vermont Agency of Natural Resources v. United States, 529 U.S. 765, 781 (2000).[6] As Ott makes clear, that is not the case with subpoenas. "Governmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts." In re Missouri Dep't of Natural Resources, 105 F.3d 434, 436 (8th Cir. 1997). Thus, there is no sound reason to read the CSA's use of the word "person" in its subpoena enforcement provision to preclude the enforcement of a subpoena issued to a state agency, since States have long established responsibilities to respond to valid federal discovery requests.

Ricco-Jonas' last argument is that the subpoena served by the DEA violates the Fourth Amendment rights of the individuals whose information had been collected by the PDMP. Ricco-Jonas asserts that, under the parens patriae doctrine, she, on behalf of the State, can raise the Fourth Amendment rights of these individuals as a basis for refusing to comply with this subpoena.

This argument fails. The Supreme Court has long rejected the argument that the State can assert the constitutional rights of its citizens against the United States. Massachusetts v. Mellon, 262 U.S. 447, 485-86 (1923). In another litigation in which a federal court enforced a DEA subpoena directed at the Utah PDMP for records, the court rejected the State's effort to invoke parens patriae to assert the constitutional rights of Utah residents against the federal

---

[6] The United States disputes Ricco-Jonas' claim that the description of Vermont Agency in the United States' opening memorandum was somehow misleading. Indeed, it is an entirely accurate paraphrase of the case.

government.  United States Dep't of Justice v. Utah Dep't of Commerce, 2:16-cv-611, 2017 WL 3189868, at *5 (D. Utah July 27, 2017). That decision is sound and should be relied on here. [7]

For the reasons stated, here and in the United States' opening memorandum, this Court should grant the petition and order Ricco-Jonas to comply with the subpoena within 30 days of the order.

                              Respectfully submitted,

                              SCOTT W. MURRAY
                              United States Attorney

                              By:  /s/ Seth R. Aframe
                              Seth R. Aframe
                              MA Bar No. 643288
                              Assistant U.S. Attorney
                              53 Pleasant Street, 5th Floor
                              Concord, NH  03301
                              (603) 225-1552
                              seth.aframe@usdoj.gov

Dated: September 11, 2018

---

[7] In that case, the Utah court did consider an argument that the Supremacy Clause did not invalidate the State requirement that PDMP records can only be obtained via search warrant because PDMP data is protected by the Fourth Amendment.  The State argued that there was no conflict between state and federal law because the DEA cannot operate by subpoena to obtain PDMP records anyway since there is a reasonable expectation of privacy in those records.  The court rejected that argument, holding that there is no reasonable expectation of privacy in PDMP data, and therefore the use of a subpoena is appropriate.  Based on that conclusion, the court decided that Utah's requirement for a search warrant violates the Supremacy Clause and authorized the DEA to proceed by subpoena since federal law does not require the DEA to demonstrate probable cause.  2017 WL 3189868, at **8-9. The United States does not perceive Ricco-Jonas to be making this Supremacy Clause argument here, but notes this authority in case Ricco-Jonas is in fact making that argument.