UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                          \*
UNITED STATES DEPARTMENT OF               \*
JUSTICE,                                  \*   18-mc-56-LM
                    Petitioner,           \*   September 26, 2018
                                          \*   10:40 a.m.
            v.                            \*
                                          \*
MICHELLE RICCO JONAS,                     \*
                    Respondent.           \*
                                          \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



TRANSCRIPT OF SHOW CAUSE HEARING
BEFORE MAGISTRATE JUDGE ANDREA K. JOHNSTONE



Appearances:

For the Petitioner:     Seth R. Aframe
                        US Attorney Office
                        53 Pleasant Street, 4th Floor
                        Concord, NH 03301


For the Respondent:     Anthony Galdieri (NHAG)
                        Lawrence Edelman, (NHAG)
                        Civil Bureau
                        33 Capitol Street
                        Concord, NH 03301-6397


Court Reporter:         Sandra L. Bailey, LCR, CRR
                        Official Court Reporter
                        U.S. District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1454

1                     P R O C E E D I N G S

2           THE CLERK:  This court is now in session and

3    has before it for consideration a show cause hearing in

4    United States Department of Justice versus Jonas,

5    18-mc-56-LM.

6           THE COURT:  Okay.  For the record if we could

7    have parties and counsel identify themselves, I would

8    appreciate that.

9           MR. AFRAME:  Seth Aframe for the United States

10   Department of Justice.

11          MR. GALDIERI:  Anthony Galdieri for the New

12   Hampshire Attorney General's Office and Ms. Ricco Jonas,

13   program manager at the New Hampshire PDMP.

14          MR. EDELMAN:  And Lawrence Edelman.

15          THE COURT:  Okay.  Very good.  So, counsel for

16   the Attorney General's Office, will both of you be

17   presenting today or will just one of you be presenting.

18          MR. GALDIERI:  It will likely be just myself,

19   your Honor, unless I have a question for --

20          THE COURT:  Okay.  That's fine.  Give me just

21   a minute.  I'm trying to sign into my account here.  For

22   some reason it's taking a little longer than expected.

23          Okay, so, I thank everyone for the very

24   thorough briefing that's been provided.  It's been

25   extremely helpful to me.  I've had a chance to review

1    all of the materials that have been provided by both

2    sides, and I have some questions.  I'm sure that both

3    parties have information and materials that they would

4    like to highlight for the Court as well, but why don't

5    we do this.  I'm just going to start by it's the

6    government's motion to compel, so I'm going to allow

7    them to make a presentation.  I'll allow you to respond,

8    Attorney Galdieri.

9            You don't need to reiterate everything that's

10   in your pleadings but there may be things that you want

11   to highlight, and then I, obviously, as I'm sure you can

12   anticipate, have some questions.  Okay?

13           MR. AFRAME:  I do think that the pleadings

14   cover what I think is a straightforward legal issue in

15   the case.

16           I do just want to talk at the outset about

17   some of the things that I saw in my friend's brief about

18   service just so that we're clear on what happened.

19           THE COURT:  Okay, but maybe we don't even need

20   to because from my perspective what happened before this

21   particular subpoena was issued doesn't address, from the

22   Court's perspective, or isn't relevant to the Court's

23   perspective, of the analysis of whether the subpoena at

24   issue, the one that's before me right now is or is not

25   enforceable.

1          MR. AFRAME:  Okay.  Well, then, I'm happy to

2     turn --

3          THE COURT:  Okay?  So, I don't think we need

4     to go there.  So, Attorney Galdieri, unless you tell me

5     otherwise, you think there's something about what

6     happened before this subpoena was issued that impacts or

7     requires me to rule in a particular way, I don't want to

8     talk about what happened before the subpoena.

9          MR. GALDIERI:  No, your Honor, that's fine.

10          THE COURT:  All right.  So thank you, Attorney

11     Aframe, we can just move right past that.

12          MR. AFRAME:  That's great.  Okay, so turning

13     to the merits of what I think what is at issue here, the

14     question I think narrowly before the Court today is what

15     does it mean when we say in the case of contumacy buyer

16     refusal to obey a subpoena issued to any person.  And

17     what happened here was the United States DEA served an

18     administrative subpoena that's authorized by Section

19     876(a) on a person that it believes has custody or

20     control over documents that are relevant to an ongoing

21     DEA investigation.

22          And you've seen the papers.  The response to

23     the subpoena was not to comply with the subpoena on

24     various legal grounds that have been presented.  And so

25     we're here asking you to enforce the subpoena served to

1    that person.

2             THE COURT:  Okay.  Can I just stop you for a

3    minute.  Attorney Galdieri, is it the respondent's

4    position that the DEA investigation is not for an

5    appropriate purpose?  Are you challenging the purpose of

6    the investigation?

7             MR. GALDIERI:  No, our claim is limited to the

8    legality of the subpoena and whether or not the DEA has

9    the authority under the CSA to actually subpoena the

10   state, its agencies and its officials as a matter of

11   statutory construction.  And from a Fourth Amendment

12   perspective we believe that there are privacy interests,

13   reasonable expectation of privacy in the prescription

14   drug records kept within the PDMP, and that the use of

15   the subpoena cannot extend to those records absent

16   probable cause and warrant.

17            THE COURT:  Okay.  So, do you want to just --

18   I know you have other arguments that you will be making,

19   but can you focus on this argument which seems to be the

20   biggest one, which is there is privacy interests out

21   there and there are these Fourth Amendment protections,

22   and for me to enforce the subpoena would run afoul of

23   those.

24            MR. AFRAME:  So I have two responses.  One is

25   to the extent there are Fourth Amendment protections,

1  and I think there's a good argument there are not, but

2  to the extent there are, the state's not the one to

3  assert those.  The Fourth Amendment interest exists in

4  the people whose records they are, they are not here

5  today.  The state is trying to make their arguments for

6  them.

7          I cited some cases about the parens patriae

8  doctrine in my papers as I was, you know, looking a

9  little bit at it last night.  The Supreme Court in, you

10  know, an older case called South Carolina versus

11  Katzenbach says a state cannot raise a constitutional

12  right, federal constitutional right of its citizens

13  because in the parens patriae doctrine there's two

14  sovereigns at work, the federal sovereign and the state

15  sovereign.  The federal sovereign has just as much right

16  and responsibility for its citizens as the state

17  sovereign has.  And so it's not an appropriate use of

18  that doctrine to raise Fourth Amendment rights of other

19  people.  So I think that's one point.

20          The second point is this is material that by

21  statute all know is going to be released, and while the

22  state PDMP has one requirement that if it goes to law

23  enforcement the state that says that it needs to have a

24  probable cause showing, there are all sorts of other

25  uses that are set forth in the statute for where this

1    information can be disclosed that doesn't require any

2    kind of probable cause.

3            So, you know, when one releases, there's a

4    third-party records doctrine, when one releases

5    information and knows, should know, could know that it's

6    going to be used for all sorts of purposes or could be

7    used for all sorts of purposes, then I think the Fourth

8    Amendment interest is significantly diminished.

9            So I think that's our second argument.  That

10   there is no Fourth Amendment impediment even if the

11   state could raise that argument, which I don't think

12   they can.

13           THE COURT:  Okay.  But isn't there also a

14   statutory scheme that contemplates the production of

15   those records?

16           MR. AFRAME:  Well, so --

17           THE COURT:  And doesn't have within it any

18   further protections?

19           MR. AFRAME:  Right.  Yes.  So the DEA has a

20   subpoena provision that doesn't limit, but I do think --

21   so I don't want to make my argument too far, I don't

22   want to run astray.  If we did have a citizen here who

23   said the DEA is using its, you know, 876 power and

24   they've got these records of mine and now I'm being

25   prosecuted, and they did that without probable cause,

1  could a person raise the Fourth Amendment argument?

2  Yes.  I don't know that it's a complete answer to that

3  to say, well, we did it by subpoena.  That might be part

4  of the answer.  But I don't know -- I just don't want to

5  take my argument too far.

6           THE COURT:  Okay.

7           MR. AFRAME:  But I do think it's significant

8  here that Congress contemplated the DEA would have

9  access to all different kinds of records and they don't

10 need probable cause to do it, and so the argument that

11 I'm positing that some citizen might make is not what's

12 going on here.  The state has these records.  The state

13 doesn't have a Fourth Amendment interest in them, and

14 the, not the state, but the director won't turn them

15 over.

16          THE COURT:  Okay.  So Attorney Galdieri, let

17 me just ask you this on this Fourth Amendment issue.

18          Doesn't the Sturm Ruger case address this

19 issue where the Court of Appeals has said that Fourth

20 Amendment concerns are satisfied if the agency proves

21 that the subpoena seeks information relevant to an

22 authorized purpose, is adequately described, and was

23 issued in accordance with proper procedures.  Doesn't

24 that address the Fourth Amendment concern that you have

25 here?

1          MR. GALDIERI:  Your Honor, the way we

2   understand the constitutional jurisprudence is that an

3   administrative subpoena cannot issue to access records

4   where there is a Fourth Amendment-based reasonable

5   expectation of privacy in the information that is

6   sought, where the Fourth Amendment actually protects the

7   information.

8          THE COURT:  But you have a statutory scheme

9   that already exists that contemplates access.

10          MR. GALDIERI:  We would argue from our

11   perspective it does not contemplate access of records

12   held by the state.

13          THE COURT:  What's your position to that,

14   Attorney Aframe?

15          MR. AFRAME:  It does not contemplate records

16   held by the state, I don't agree with that.  I don't see

17   any distinction between state records, other records.

18   These are records.  876(a) speaks in broad terms about

19   subpoenaing any records, including books, papers,

20   documents or other tangible things which constitute or

21   contain evidence.  Whether they are the state's --

22   whether they are in a state database or some other

23   place, they are in my view covered by that plain

24   language of 876(a).  So, no, I don't think it matters

25   that they are in a state database for purposes of

1    whether there's an authority to use the subpoena.

2         And so this is a properly done administrative

3    subpoena under the Fourth Amendment, which is what Sturm

4    Ruger says.  I think the question that's being raised is

5    if the subpoena is being used to subvert the warrant

6    requirement, then I think you might have, you know, a

7    warrant that requires probable cause.  Administrative

8    subpoenas don't require probable cause.

9         So the question here is, is this some kind of

10   super secret kind of information that should require

11   that I think is what the argument -- I think that's the

12   argument they're making.

13        THE COURT:  Is that the argument you're

14   making, Attorney Galdieri, that the only way to access

15   this information is through a warrant?  As I read the

16   statute, it says court order or warrant.  And if I

17   enforce the subpoena, isn't that a court order and

18   wouldn't it then be --

19        MR. GALDIERI:  It would have to be a court

20   order based on probable cause under the state statute.

21        THE COURT:  But Sturm Ruger says probable

22   cause is established under the circumstances that have

23   been presented here.  You've indicated that you're not

24   challenging the legitimacy of the investigation.

25        MR. GALDIERI:  Well, we are challenging the

1  legitimacy of the subpoena.  We think the subpoena is

2  invalid and it cannot actually issue against the state,

3  its agencies or its sovereign.  As a matter of statutory

4  construction, the term person as used in the CSA, does

5  not embrace the sovereign states, and the longstanding

6  United States Supreme Court presumption that the term

7  person is used in a congressional enactment does not

8  include the sovereign, applies to this statute.  And if

9  the CSA is read as a whole, it's very clear what it

10  contemplates.  It contemplates cooperative arrangements

11  with state's inner agencies.  In Section 873 --

12          THE COURT:  Are you suggesting that because

13  there's a statute that says that the state and federal

14  government should cooperate with each other that that

15  means they are forbidden from subpoenaing documents?

16          MR. GALDIERI:  It means that Congress did not

17  intend in 876 that administrative investigative

18  subpoenas would issue against the state.

19          THE COURT:  What's your authority for that?

20  What's your authority for that?  I don't read the

21  Controlled Substances Act and that language as saying

22  that at all.  If that were the case, wouldn't they have

23  carved out those types of subpoenas from the

24  administrative subpoena function that's in the law?

25          MR. GALDIERI:  Well, I think one of the things

1   we have to look at is there is a longstanding

2   presumption that when the word person is used in a

3   congressional enactment, it does not include the

4   sovereign states or the United States.

5           THE COURT:  But the subpoena in this case was

6   issued to an individual.

7           MR. GALDIERI:  Well, it was issued to Ms.

8   Ricco Jonas as the program manager of the New Hampshire

9   PDMP.

10          THE COURT:  But she's designated as the person

11  who's the keeper of the record.

12          MR. GALDIERI:  She is not considered -- she is

13  a state official.  That's who she is.  Just like in the

14  Will case, the U.S. Supreme Court said state officials

15  sued in their official capacity, asking them to --

16          THE COURT:  She's not being sued.  There's no

17  lawsuit here.  What's your authority that an

18  administrative subpoena is the same thing as commencing

19  a lawsuit?  This case is in the docket as a

20  miscellaneous case.  It's not the federal government

21  versus the state of New Hampshire.

22          MR. GALDIERI:  Well, your Honor, we would make

23  an offer of proof that Ms. Ricco Jonas does not possess

24  and have lawful access to New Hampshire PDMP data in her

25  personal capacity.  She only has that access as a state

1  official, and state law constrains her, absent an order

2  based on probable cause issued by a court, to release

3  that information.  She cannot just voluntarily turn it

4  over without committing at least one state crime, maybe

5  other state crimes.  So she can't do that under our

6  state law.

7          THE COURT:  Are you arguing that if this Court

8  were to compel compliance with the subpoena that she

9  would be subject to criminal sanctions?

10          MR. GALDIERI:  I think there's a possibility

11  that she could be subject to criminal sanctions.  She

12  may have a defense to those criminal sanctions.  But I

13  do not --

14          THE COURT:  And who's the body or the entity

15  that would be commencing criminal action against Ms.

16  Jonas?

17          MR. GALDIERI:  Well, I don't have the answer

18  to that at this time.

19          THE COURT:  Is it the Attorney General's

20  Office?

21          MR. GALDIERI:  But we also have concerns --

22          THE COURT:  Is it the Attorney General's

23  Office?

24          MR. GALDIERI:  It would probably, yes, be the

25  Attorney General's Office.

1          THE COURT:  What's the likelihood of that

2   happening if the court were to order her to produce the

3   documents, I mean, seriously.

4          MR. GALDIERI:  Well, I'm not sure the

5   likelihood would be high if the court ordered her to

6   produce the documents.  I'm not sure that's the legal

7   question.

8          THE COURT:  So under this situation where

9   there's a federal investigation that you're not

10  challenging the legitimacy of for lack of a better word,

11  and there are records that Ms. Jonas is in the custody

12  and control of, whether it's in her individual or her

13  official capacity, as the Court looking at this

14  administrative subpoena, I'm not sure I need to even

15  reach the issue of whether it was -- she was named in

16  her official or her individual capacity.  She is the

17  keeper of those records.  That's what she's designated

18  to be responsible for under the statute.

19          So, my question to you is, how are those

20  documents to be accessed in connection with an

21  investigation?  What's your process?  What do you say

22  the government needs to do in order to get those

23  records?

24          MR. GALDIERI:  They need to establish probable

25  cause independent of PDMP-kept data and present an

1  order, court order based on probable cause to the PDMP

2  program manager.

3          THE COURT:  So how is it that the Sturm Ruger

4  case doesn't address that issue?

5          (Pause.)

6          MR. GALDIERI:  Your Honor, we -- two answers

7  to that.  Our first answer is we're not a person within

8  Section 876.  We don't believe we're a person who can be

9  subpoenaed, who can serve a subpoena, who can have a

10  subpoena enforced against them as a matter of statutory

11  --

12          THE COURT:  When you say we aren't a person,

13  who's the we?

14          MR. GALDIERI:  Ms. Ricco Jonas --

15          THE COURT:  Ms. Jonas isn't a person?

16          MR. GALDIERI:  The program manager has to

17  release the information.  The program manager.  The

18  program manager, if something happens to her tomorrow, I

19  assume they're going to still want us to enforce the

20  subpoena against the next program manager.

21          MR. AFRAME:  I don't agree with that.  I think

22  that's made up.  We cannot hold someone else in contempt

23  for her.  If she decides to take a new job tomorrow, we

24  would have to issue a subpoena to the next program

25  manager by their name and ask for those records.  We

1    could not hold someone no longer -- that person would

2    not have control anymore, we could ask you to hold that

3    person in contempt, so I don't accept that premise.

4         MR. GALDIERI:  And this is why, your Honor,

5    that it is an action against the state.  It is the

6    state's information.

7         THE COURT:  What's your authority that this is

8    an action against the state?  I don't have a lawsuit in

9    front of me.  I have a subpoena, administrative subpoena

10   in front of me.  What authority do you have that you can

11   point me to that says that when an entity, government

12   entity, federal government entity serves a subpoena

13   seeking records that are held by an individual such as

14   Ms. Jonas who's designated as the keeper of these

15   records, that that is a lawsuit against the state?  I

16   just -- I don't have any basis to get to that

17   conclusion.  I'm asking you to try to help me to get

18   there.

19        MR. GALDIERI:  Well, we would submit, your

20   Honor, that this is a petition to enforce, this is a

21   suit, and that the actual statutory --

22        THE COURT:  It's a petition to enforce a

23   subpoena under the discovery rules.

24        MR. GALDIERI:  No, it's under Section 876.

25        THE COURT:  That's where the authority to

1    issue the subpoena comes from.  But the enforcement

2    mechanism is to say we've issued an administrative

3    subpoena.  It hasn't been complied with.  Court, compel

4    compliance.

5            MR. GALDIERI:  Well, your Honor, I would

6    suggest in the Al Fayed case this issue was raised with

7    respect to a different statute where the CIA claimed

8    that it was not a person who would have to produce

9    documents in that case pursuant to the statute at issue.

10   I think it was Section 1782.  And the DC Circuit court

11   agreed and the district court agreed and found that the

12   CIA was not a person --

13           THE COURT:  But this isn't a subpoena that's

14   been issued -- it's a subpoena that's been issued to the

15   keeper of the records, to the individual who's

16   designated by statute as being responsible for

17   maintaining these records.

18           (Pause.)

19           MR. GALDIERI:  Your Honor, I think there is a

20   presumption in the case law that when you name an

21   official, a state official in, like Ms. Ricco Jonas's

22   name as the program manager of the New Hampshire PDMP,

23   that the subpoena or the action, whatever it is, is

24   being brought against the state.  It is the state's

25   information.  It is the state's interest.  Can they go

1    and subpoena the governor and ask him to go to the PDMP

2    and get the information out of it?  He's in charge of

3    state government.

4              I mean, from our analysis of the CSA, and this

5    analysis has been applied to other statutory schemes and

6    rule schemes, even the Federal Rules of Civil Procedure,

7    this analysis of whether the authority exists, which in

8    876 that a person includes the state, whether it

9    includes its officials or its agencies, is a

10   longstanding presumption that the United States Supreme

11   Court applies.  And the Ott case and Yousuf case applied

12   it in the context of Federal Rule of Civil Procedure 45.

13   Al Fayed applied it in the context of another statute

14   that's similar to the one we're looking at in Section

15   876.  And we would submit that in determining whether or

16   not there's even authority to issue a subpoena to a

17   state official to get state information when the state

18   is the real party in interest, there has to be authority

19   that comes out of the CSA for that.  And it can't be

20   that Ms. Ricco Jonas, just by virtue of being a person,

21   can take information from the state that the state has

22   said it can't be taken, it can't be moved out, take it

23   and give it to the DEA without, I would argue that she

24   doesn't have the authority to do that.  I'm not sure she

25   has the authority to do that under the law.

1          THE COURT:  Attorney Aframe.

2          MR. AFRAME:  This brings us all the way back

3     to the preemption point because the argument is the

4     state won't allow her to release the records.  Well,

5     what she's relying on is a provision that can't be

6     applied against a federal subpoena, and that's what the

7     Ninth Circuit case is really about, which I know they

8     didn't want to make that argument, I don't think,

9     because the Ninth Circuit ruled on the preemption point

10    and that probably would have been a start, but we're

11    kind of circling back because what they're saying is she

12    can't turn over the documents because there's a

13    provision in state law that says she needs probable

14    cause to give it to a law enforcement agency.  If they

15    had just said that straight out, our answer would have

16    been yes, because of preemption.  The supremacy clause

17    says that 876 trumps that because their state rule

18    interferes with the federal attempt under the CSA to get

19    information.  And so all they're really saying now is,

20    oh, she's not in control of the records because the

21    state law doesn't let her turn them over, but that

22    provision they're relying on is preempted.  So if you

23    get rid of that, of course she can turn them over.

24    There's no impediment.

25          MR. GALDIERI:  Your Honor --

1        THE COURT:  So address the supremacy clause

2   issue. It wasn't the focal point of either one of your

3   arguments and so I was tempted to start there and say

4   doesn't that end the conversation, but it looks like

5   that's where we ended up right now.  So I'm asking you,

6   if that's what you're relying on, she's concerned about

7   the state requirements, there are lots of occasions

8   where folks come in from the Attorney General's office

9   in other places and say we have these state law

10  constraints, and I understand that, which is why I asked

11  you the question of if I compel the production, doesn't

12  that address the other piece of the state law even which

13  says it's a court order or a warrant based on probable

14  cause?

15        MR. GALDIERI:  Your Honor, we don't agree with

16  the premise that our state law on probable cause

17  requirement is preempted by the supremacy clause.  The

18  Ninth Circuit, the Utah case, the District of Oregon

19  case never reached the issue of whether a subpoena could

20  issue under 876 to the state or its sovereign agencies

21  or its officials.  It never addressed that issue.  And

22  if that cannot happen under the CSA and there's no --

23        THE COURT:  Okay, but if I find, and I'm not

24  saying I'm making this finding, but if I find that there

25  is no state action, now what?  There is no action

1  against the state, now what?  What's your argument now?

2         (Pause.)

3         MR. GALDIERI:  Well, your Honor, I think our

4  argument then becomes it is an improper use of an

5  administrative subpoena under the Fourth Amendment where

6  you have a Fourth Amendment-based reasonable expectation

7  of privacy, and the records that are being sought, that

8  is recognized as a constitutional right of privacy, that

9  the warrant requirement applies.

10        THE COURT:  And then what's your response to

11 the Sturm Ruger authority in the circuit that says it's

12 met when there's a legitimate investigation?

13        (Pause.)

14        MR. GALDIERI:  Your Honor, we would reiterate,

15 I'm not entirely familiar with the facts of Sturm Ruger.

16 If that was an administrative subpoena at issue, I mean,

17 our argument is based on our research that an

18 administrative subpoena cannot be used to acquire

19 documentation or information that there's a reasonable

20 Fourth Amendment-based expectation of privacy.  I would

21 have to look more closely at Sturm Ruger to answer your

22 question.

23        THE COURT:  And I just want to set those

24 arguments aside.  Under the state law scheme,

25 recognizing and accepting that there may be privacy

1   interests in the information, there is still a process

2   by which that information is obtainable.  You agree with

3   me, correct?

4           MR. GALDIERI:  Correct.

5           THE COURT:  Okay.

6           MR. GALDIERI:  Correct, there's always a

7   process --

8           THE COURT:  Despite those privacy interests.

9           MR. GALDIERI:  Correct.

10           THE COURT:  There's a process.  And what it

11   appears that folks disagree about is whether the

12   supremacy clause takes away the state's arguments in

13   this case, or whether if I otherwise find that the

14   government's administrative subpoena is appropriate,

15   that they've met whatever the state law requires by

16   issuing an order to compel production of the materials

17   under the subpoena to enforce the subpoena.  And what

18   you're telling me is my order, if I were to issue one,

19   authorizing the government's subpoena, ordering that it

20   be complied with, that that does not satisfy the state

21   law requirement for a court order?

22           MR. GALDIERI:  If it is a court order that

23   articulated that it is based on probable cause, which I

24   think is what is being indicated, or --

25           THE COURT:  I'm -- I've been asking, doesn't

1    Sturm Ruger address that issue for me about probable

2    cause, and if I were to go down that road and say Sturm

3    Ruger addresses the probable cause issue, I do the

4    analysis and I find that the subpoena is enforceable and

5    I order that it be complied with, I'm asking you under

6    those circumstances why isn't it that -- how is it that

7    it doesn't neatly fit in what the state law requires.

8    That's what I'm trying to understand.  I'm struggling

9    with that.

10           MR. GALDIERI:  I would have to go back and

11   revisit Sturm Ruger --

12           THE COURT:  Okay.

13           MR. GALDIERI:  -- to answer that question

14   fully for you, your Honor.  I would say if you go

15   through the analysis and you find an 876 subpoena is

16   issued against the state --

17           THE COURT:  I don't think I have to make a

18   finding that it issues against the state.  You're

19   presuming that I'm agreeing with you on that issue, and

20   I'm not sure I do.

21           (Pause.)

22           MR. GALDIERI:  Your Honor, we would just

23   reiterate our position that we believe this is really an

24   action against the state, it is a petition to enforce

25   against the state, and that the statute does not

1   contemplate these types of subpoenas.

2          THE COURT:   Okay, but if I don't get there, if

3   I disagree with you on that analysis -- I'm looking at

4   your objection to the petition to compel compliance with

5   the administrative subpoena and I'm on page six.  It's

6   right in the middle of the page.  And you indicate here

7   right in the middle it says the legislation also

8   authorized the board to disclose PDMP data to authorized

9   law enforcement officials on a case-by-case basis for

10  the purpose of investigation and prosecution of a

11  criminal offense when presented with a court order based

12  on probable cause.  No law enforcement agency or

13  official shall have direct access to the program.

14         So my question to you is, if the court finds

15  that the Sturm Ruger case provides First Circuit

16  authority, federal authority that the government has

17  established probable cause and I otherwise find that the

18  administrative subpoena has been properly sought, for

19  lack of a better word, or issued based, on what federal

20  law says I'm supposed to analyze an administrative

21  subpoena under, then if I issue an order compelling

22  compliance with the subpoena, am I not squarely in

23  318-B:35, I(b)(3)?  So we don't even have a violation,

24  alleged violation or issue with state law.  It's

25  consistent.

1          MR. GALDIERI:  Yet, your Honor, if that is

2    what you find in your order, yes, that order I believe

3    would be consistent if that is what you find based on

4    your analysis without conceding any appellate rights.

5          THE COURT:  Okay.  And I understand that your

6    -- what you're telling the Court is the reason I can't

7    get to this place is because the subpoena in this case

8    is an action against the state.

9          MR. GALDIERI:  Yes.  You cannot get -- it is a

10   subpoena that is directed to the state.  There's no

11   authorization in the CSA 876 to direct subpoenas to the

12   state -- to the state, their agencies or their officials

13   to command them to produce records under the CSA for the

14   purposes of an investigation.

15         THE COURT:  So you're taking that to its

16   logical conclusion in what you're saying is the only way

17   for law enforcement, whether it's state or federal law

18   enforcement, to access these records is with what?  How

19   would they get these records?  What's your alternative

20   theory for how they would get them?

21         MR. GALDIERI:  So they go out and they do

22   investigative work that gives them, generates probable

23   cause.  They come and they get a court order based on

24   probable cause and ask to access the data.  The

25   statutory scheme contemplates that, it doesn't

1  contemplate that law enforcement investigations start

2  with the PDMP, so that law enforcement --

3          THE COURT:  I don't think -- there's an

4  affidavit here I think that suggests that's not what's

5  happening.  They've done an investigation and they're in

6  the place where they are subpoenaing those records as

7  part of their investigation.

8          So your position is, short of getting a

9  warrant they can't access these records.  That's your

10  position.

11          MR. GALDIERI:  That's correct.

12          THE COURT:  Okay.  That's helpful to me.

13  Thank you, I appreciate that very much.

14          All right, I've interrupted folks and so what

15  I want to do is give both sides an opportunity to just

16  regroup, take a few minutes.  I think you sort of

17  understand my thought process and where I'm having some,

18  I needed some additional information, so I'm going to

19  just let you think about how you want to sum up, if

20  there's anything you want to highlight for me.  If you

21  want to take a few minutes, if you have the Sturm Ruger

22  case handy and you want to take a quick look at it, I'm

23  happy to do that too.

24          MR. GALDIERI:  Sure.

25          THE COURT:  All right?

 1           MR. AFRAME:  Take a few minutes?

 2           THE COURT:  Yes, just stretch your legs, take

 3    a few minutes.  Why don't you come back in ten minutes.

 4    All right?

 5           (Recess.)

 6           THE COURT:  Okay, so I did tell you that I was

 7    going to give you an opportunity to wrap up and

 8    highlight things for me, but I actually have two loose

 9    ends, and they may be the same loose ends that you were

10    planning on addressing, and so you can tell me you were

11    just going to plan on addressing those in your closing

12    remarks.

13           So the first question I have is for Attorney

14    Galdieri.  We talked a little bit about, you know, we

15    were talking about a scenario where there was a warrant

16    issued based on probable cause, and so my question for

17    you is, in that scenario am I correct in assuming that

18    it would be Ms. Ricco Jonas or some other individual

19    that holds her position if she wasn't that individual,

20    that would be facilitating the compliance with the

21    warrant?

22           MR. GALDIERI:  Yes, that's my understanding.

23           THE COURT:  Okay.  All right.  And so the

24    other question I have is really a question for both of

25    you and  it goes back to the Sturm Ruger case that talks

1        about what satisfies the Fourth Amendment.

2                And so if the Fourth Amendment is satisfied,

3        am I correct that that subsumes within it probable

4        cause.  All right?  So those are my questions.

5                MR. AFRAME:  So, I mean, the Fourth Amendment

6        -- so I don't know what the state's action means.  I

7        mean, you know, the state has to address probable cause.

8                THE COURT:  Sure, yes.

9                MR. AFRAME:  The Fourth Amendment doesn't

10       always require probable cause.  It requires probable

11       cause for a warrant.

12               THE COURT:  Right.

13               MR. AFRAME:  Warrant shall issue on probable

14       cause.  This is an administrative subpoena.  It's

15       technically -- it's not a search.  It's a request for

16       documents.  And I think that the notion is Sturm Ruger,

17       especially where these documents are documents that are

18       in the possession of a third party, there's no reason

19       that an administrative subpoena can't be used for those

20       things, and the Fourth Amendment is satisfied because

21       this is not a search.  The warrant requirements of the

22       Fourth Amendment doesn't apply.  And the standard under

23       Sturm Ruger for satisfying the Fourth Amendment is met.

24               Now, if there's a probable cause requirement

25       under the state law, that's back to preemption because

1  the Fourth Amendment is satisfied.  So there's no

2  federal impediment to enforcing the federal statute,

3  because the only way they can get around supremacy

4  issues is to say there's some federal impediment to

5  stopping the federal government from using its authority

6  under 876(c).  Well, what would trump a federal statute?

7  A federal Constitution.  But the federal Constitution is

8  met because this is not a search.  The warrant

9  requirement does not apply.  The Fourth Amendment is

10  satisfied.

11        Their law says probable cause.  Now, I can't

12  tell you if they mean by probable cause Fourth Amendment

13  probable cause, but I'll assume they do.  If they're

14  engrafting their own desire for additional protections

15  that the federal Constitution does not impose, that's

16  preempted because that interferes with what the federal

17  government's doing.

18        THE COURT:  Very good.  Attorney Galdieri.

19        MR. GALDIERI:  Your Honor, our response to

20  that is that we have argued that it is the Fourth

21  Amendment's probable cause standard.  We believe our

22  state statute encapsulates that by requiring probable

23  cause.  It's really a reflection of what the Fourth

24  Amendment requires.

25        And we read the Sturm Ruger case to say that

1    in the course of resisting an administrative subpoena,

2    the Fourth Amendment is available to the challenger as a

3    defense against enforcement of the subpoena.  And we

4    believe those Fourth Amendment interests are at issue

5    here.  A person -- New Hampshire residents have a Fourth

6    Amendment-based reasonable expectation of privacy in

7    their PDMP kept data.  The state has recognized that in

8    the law and has protected it.  And there is federal case

9    law that recognizes that prescription drug records, a

10   subset of medical records, are highly private in nature,

11   and there are circuit courts that recognize that there

12   is a reasonable expectation of privacy in those records.

13          The Douglas case from the Tenth Circuit, the

14   Doe case from the Third Circuit, and United States

15   Supreme Court has recognized that there is a Fourth

16   Amendment-based reasonable expectation of privacy in

17   medical records, in Whalen versus Roe and Ferguson

18   versus City of Charleston.  And in the Seventh Circuit,

19   or the First Circuit, excuse me, has even recently in

20   Eil versus U.S. Drug Enforcement Administration in 2017,

21   commented on the -- that persons have significant

22   interests in their medical records which the First

23   Circuit has described previously as highly personal and

24   intimate in nature.

25          We do not read Sturm Ruger to say that a

1    Fourth Amendment defense through an administrative

2    subpoena cannot be raised.

3            THE COURT:  All right.  You're all set on

4    that?  I'm going to turn it over to you, Attorney

5    Aframe, for further response.

6            MR. AFRAME:  So I suppose, when he says Fourth

7    Amendment defense, he's saying that the no warrant, what

8    the Fourth Amendment says, of course, is the right of

9    the people in their papers against unusual searches and

10   seizures so as not to be violated and no warrant shall

11   issue upon probable cause.

12           Well, we're not seeking a warrant.  That's

13   pretty much, that's established, we're using

14   administrative subpoena.  I suppose the question that

15   he's raising is can we use an administrative subpoena to

16   get records that are within the PDMP or are we required

17   to use a warrant.  I think that's the argument that's

18   being made.  And I think that common experience tells us

19   that subpoenas are commonly used for medical records.

20   Grand jury subpoenas issue all the time to hospitals for

21   records.  We don't say you need a search warrant to go

22   to Dartmouth-Hitchcock and get a file.

23           Congress obviously understood that because

24   they then passed HIPAA, and HIPAA as you know is a

25   complicated regulatory scheme that decides when and,

1    when you can and cannot get records from third-party

2    health care entities.  That's, you know, so, you don't

3    need a warrant, you need to comply with the statutory

4    regime, you know, in certain circumstances, but that has

5    nothing to do with whether you need a subpoena or a

6    warrant.

7            So, I would suggest to you that when records,

8    I'm not going to disagree that they're not personal

9    records, of course they are, but when they are released

10   to third parties, that warrant requirement of the Fourth

11   Amendment does not apply.  And I think if you look at

12   the PDMP statute you will see that it has many, many

13   different ways that someone's records can be released to

14   different entities without there being probable cause.

15   Their own statute says you can give it to the Board of

16   Medicine.  You can give it to other different entities

17   without probable cause.

18           So, when you release records, and you

19   understand that they're then going to end up in this

20   database and then they can end up in all sorts of

21   different places, that just doesn't comport when the

22   warrant requirement would apply.

23           So the bottom line here is that the warrant

24   requirement does not apply.  We are dealing with the

25   part of the Fourth Amendment that says the right of the

1   people to be secure in their papers against unreasonable

2   searches and seizures shall not be violated.  And what

3   Sturm Ruger says is that part of the Fourth Amendment is

4   satisfied so long as an administrative subpoena meets

5   the requirements laid out here.  And I don't think

6   there's any dispute that they don't.

7           So, that's why I think Sturm Ruger's

8   controlling, because the warrant requirement does not

9   apply.

10          THE COURT:  Okay.  Thank you.  Attorney

11  Galdieri.

12          MR. GALDIERI:  Just one piece of information

13  about the state statutory scheme and how it works.  The

14  state statutory scheme is in place to benefit the health

15  and welfare of patients in the medical profession.  It's

16  not a law enforcement tool.

17          THE COURT:  Well, I think there is an aspect

18  of it that also addresses that the materials are

19  recognized that they would be used in law enforcement

20  activity.

21          Am I reading that incorrectly?

22          MR. GALDIERI:  They are used in -- PDMP

23  materials are only used with respect to law enforcement

24  if there is a court order based on probable cause.

25          THE COURT:  Well, then that was contemplated

1     when the scheme was put in place.  It wasn't simply for

2     use by a health care professionals.  It recognizes that

3     the materials could be used by law enforcement in

4     investigations as well.

5          MR. GALDIERI:  That if a warrant based on

6     probable cause or a court order based on probable cause

7     came in, yes, I think that is the expectation generally

8     in our society that that information would then be

9     turned over, but not through an administrative subpoena.

10         And what happens within the New Hampshire

11    Pharmacy Board is this information is used to

12    investigate health care providers and to look at whether

13    there is professional misconduct and to appropriately

14    discipline or bring action against them.  It's not to

15    investigate patients.  It's not to reveal patient

16    information to the world, or even to these boards.  The

17    boards don't need to necessarily know anything about the

18    patients.  And that is part of why the PDMP is kept

19    separate from law enforcement and still has a probable

20    cause requirement attached to law enforcement requiring

21    records pursuant to --

22         THE COURT:  But it's 318-B:33 that requires

23    prescribers and dispensers to identify patient names,

24    addresses, dates of birth and phone numbers.  That's

25    part of what they're required to submit to the database.

1          MR. GALDIERI:  Sure.  There is a component to

2     this where physicians and prescribers when they input

3     information into the system, and that information goes

4     into the system into the PDMP, and then the PDMP is used

5     by the Board of Pharmacy to investigate and make sure

6     compliance is maintained by health care professionals,

7     by dispensers, by prescribing physicians.  It's not a

8     tool to be used to begin law enforcement investigations

9     against patients.

10          MR. AFRAME:  Can I make a comment on that?

11          THE COURT:  Certainly.

12          MR. AFRAME:  So that's a misunderstanding what

13     the reasonable expectation privacy standard's all about.

14     It's not a question of is it about do we want to prolong

15     for purposes.  The reasonable expectation of privacy

16     under Katz is a subjective and objective standard.  And

17     objectively this information under this statute can go

18     to a lot of different places.  That's what's important.

19     It can go to the Board of Dentistry, the Board of

20     Medicine, the Board of Nursing, the Board of

21     Registration.  I'm sure they have good purposes for it.

22     But the point is when you go to a doctor, when you go to

23     the pharmacy, you turn over your script, that script's

24     going into a database, and that database is going to be

25     available to third parties.  Once it's available to

1    third parties, that reasonable expectation of privacy

2    that would trigger the warrant requirement under the

3    Fourth Amendment is lost.

4            THE COURT:  Okay.  So, I'm going to give you

5    an opportunity to respond, Attorney Galdieri, but I'm

6    also looking at New Hampshire RSA 318-B:34.  And it

7    specifically states in paragraph one that, it certainly

8    suggests that patient information can be disclosed when

9    it's authorized by state or federal law.  And I

10   understand your arguments as they relate to whether the

11   subpoena is an action against the state and some of

12   those other issues, but the notion that this database

13   was created and it wasn't contemplated that law

14   enforcement would have access through an administrative

15   subpoena to access this information if the subpoena were

16   otherwise lawfully issued, I mean, this seems to suggest

17   exactly that, that there would be an opportunity for

18   that.

19           Am I reading this section incorrectly?

20           MR. GALDIERI:  The way I read this section,

21   your Honor, in Roman I is it specifically states that

22   the information contained in the program is not subject

23   to discovery subpoena or other means of legal compulsion

24   for release and shall not be shared with an agency or

25   institution except as provided in the subdivision.  This

1    paragraph shall not prevent a practitioner from using or

2    disclosing program information about a patient to others

3    who are authorized by state or federal law or

4    regulations to receive program information.

5            So, going to a practitioner and getting that

6    information is not forbidden.  But there are certain

7    enhanced protections when the state or any government

8    agency is going to start collecting mass amounts of

9    personally identifiable private information about

10   persons into a database.  And we believe that the

11   information in the database is subject to the

12   protections, and state officials cannot just give it

13   out.  It becomes in a sense the cookie jar, the easy

14   starting place, and that is what the New Hampshire State

15   Legislature --

16           THE COURT:  But these facts don't -- under

17   these facts this is not a case where there's a starting

18   place.  We have an affidavit that indicates there's an

19   ongoing investigation.  And you haven't challenged the

20   sufficiency that there is in fact an investigation.

21           MR. GALDIERI:  Well, we understand that there

22   is an investigation.  We understand from the declaration

23   that information may have been received by the DEA from

24   the New Hampshire Board of Pharmacy.  It is our

25   position, the position of our office that if that

1    information included PDMP data, that that was

2    inappropriate and improper under the statutory regime.

3             THE COURT:  Attorney Aframe.

4             MR. AFRAME:  So I think the section you

5    pointed, the sentence you point out is very important to

6    the analysis that I think applies here.

7             So, New Hampshire as a matter of public

8    policy, its own decision, it's how it wants to deal with

9    its PDMP data, has decided that if a state officer wants

10   to come and get PDMP information, they're going to have

11   to follow this state requirement under state law, and

12   that's a matter for New Hampshire to figure out.  What

13   we're figuring out here is what does the federal

14   Constitution Fourth Amendment require.  And my position

15   is that what needs to happen if the state were to have

16   any traction here, they would have to prove to you that

17   the warrant requirement of the Fourth Amendment applies.

18   The warrant requirement of the Fourth Amendment only

19   applies to things over which there's a reasonable

20   expectation of privacy.

21            This sentence that you point out says that a

22   doctor cannot say in response to a subpoena, guess what,

23   I'm not going to turn over the subpoena.  You know why?

24   Because it also belongs in the PDMP database.  And the

25   PDMP database has all these rules that New Hampshire has

1   put in place because it wants to, and so I'm not going

2   to comply with this subpoena.

3          What this says is, no, you do have to comply

4   with the subpoena.  Well, what does that mean?  That

5   means there's no reasonable expectation of privacy in

6   that information because in addition to your doctor

7   turning it over to the PDMP, he or she is going to have

8   to turn it over to whatever subpoenas come from, the

9   grand jury or other places where, you know,

10  administrative subpoenas that might be issued.

11         So, that just says to us that, sure, New

12  Hampshire's put a whole bunch of regulatory rules that

13  they want their state officers to comply with.  We as a

14  federal government have no stake in that matter.  But we

15  as a federal government have our own set of authorities,

16  and our question is can we enforce those authorities.

17  And as I said before, the only impediment to us doing

18  that is the federal Constitution.  And that Fourth

19  Amendment, there are two parts to it.  Does the warrant

20  requirement apply I think is the issue here, and it

21  doesn't.

22         And so when you're dealing with the first part

23  of the Fourth Amendment, we've met that.  And I think

24  this sentence that you point out goes into the analysis

25  as to why people do not have that reasonable expectation

1    of privacy under <u>Katz</u> such that the warrant requirement

2    applies, because they know that this information could

3    be released in all sorts of different ways aside from it

4    being released to the PDMP.

5             THE COURT:  Okay.  Attorney Galdieri.

6             MR. GALDIERI:  I'll just add people don't

7    voluntarily give their information over to the PDMP.

8    People seek medical treatment, medical treatment that

9    they need.  They need prescriptions, sometimes to stay

10   alive and prolong their life, and that information is

11   required by law to be put into the PDMP.  To say that a

12   patient doesn't have a reasonable expectation of privacy

13   when they walk into the doctor's office to get that

14   treatment of their condition will be available, there's

15   no reasonable expectation of privacy over them, I don't

16   think that position sounds well against the reality of

17   what occurs.  And nearly every federal court who has

18   addressed the issue has found these records are highly

19   private and highly intimate, and many have found that

20   they invoke the protection of the Fourth Amendment.

21            THE COURT:  But we have cases that have been

22   provided to the Court that have looked at PDMP records

23   in other parts of the country and have enforced

24   administrative subpoenas in the face of not exactly the

25   same arguments you're making, but awfully similar.

1           MR. GALDIERI:  So we have a Ninth Circuit

2    opinion that has reversed on standing grounds of

3    intervenors who tried to intervene in a court action for

4    declaratory judgment.  It was found that they didn't

5    have standing.  The Ninth Circuit recognized expressly

6    at the end of its opinion that the state, through an

7    action to enforce the subpoena, could raise these

8    important privacy interests at a hearing such as the one

9    we're here at today.  And we believe that the Utah

10   district court cases incorrectly decided, that the

11   Douglas case in the Tenth Circuit controls, and the

12   Tenth Circuit case in Douglas preceded the Utah case and

13   establishes that individuals have a reasonable Fourth

14   Amendment- based expectation of privacy in their

15   prescription drug records.

16           THE COURT:  Okay.

17           MR. AFRAME:  That would mean, I mean, and I'm

18   not aware of a case, maybe this case says it, but to get

19   medical records from a hospital you couldn't use a trial

20   subpoena, you couldn't use a grand jury subpoena, you

21   would have to use a search warrant to get medical

22   records from any of the many, many medical providers

23   that are out there.  You would not need HIPAA if you had

24   such a scheme because you would have had the probable

25   cause requirement as we all know is a difficult

1    requirement, probably one of the most difficult to get

2    information that there is in the law.

3           So, I'm not aware of a case that says and my

4    own practice tells me you don't need a case to get

5    medical records.  So the argument's made that somehow

6    because the state aggregates the same information, so

7    instead I have to go to Dartmouth-Hitchcock and here and

8    there to get it, I can just go to one place, changes the

9    analysis.  I'm not aware of any law that says that

10   because this information, while private, of course it's

11   private, but private does not equal warrant, and that's

12   the argument I think that's being made, and so -- I

13   think that's the bottom line.  A warrant requirement

14   doesn't apply.  I think I've explained why.  That takes

15   us back to the Fourth Amendment.  Sturm Ruger applies,

16   Sturm Ruger steps are satisfied, the Fourth Amendment's

17   been satisfied, therefore there's no federal impediment

18   to enforcing our federal law that preempts whatever in

19   the state law is inconsistent.

20           THE COURT:  Okay.  Anything further, Attorney

21   Galdieri?

22           MR. GALDIERI:  No, I don't think so, your

23   Honor.

24           THE COURT:  Okay.  So, this was very helpful

25   to me.  Thank you.  You've answered my questions very

1  well.  I'm going to take this under advisement.  I'll

2  try to issue a ruling as quickly as I can, there'll be a

3  written order, okay, a report and recommendation.  So

4  thank you.

5          MR. AFRAME:  Thank you.

6          MR. EDELMAN:  Thank you, your Honor.

7          (Hearing concluded.)

8

9

10

11

12              C E R T I F I C A T E

13

14       I, Sandra L. Bailey, do hereby certify that

15  the foregoing transcript is a true and accurate

16  transcription of the within proceedings, to the best of

17  my knowledge, skill, ability and belief.

18

19

20  Submitted: 10/5/2018

21  **SANDRA L. BAILEY, LCR, CM, CRR**
    LICENSED COURT REPORTER, NO. 15
22  STATE OF NEW HAMPSHIRE

23

24

25