# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

United States
Department of Justice

    v.                              Case No. 18-mc-56-LM

Michelle Ricco Jonas

### REPORT AND RECOMMENDATION

Before the court is the United States Department of Justice's (DOJ) petition to compel compliance with an administrative subpoena the United States Drug Enforcement Agency (DEA) issued to Michelle Ricco Jonas, manager of the New Hampshire Prescription Drug Monitoring Program (PDMP). Doc. no. 1.  The district judge ordered Jonas to show cause why she should not be compelled to obey the subpoena and produce certain PDMP records.  The judge referred the matter to the undersigned magistrate judge for a recommended disposition.  Doc. no. 3.  See 28 U.S.C. § 636(b)(1)(B); LR 72.1.  After reviewing the parties' submissions and hearing their arguments, the court recommends that the district judge grant the petition.


## I. Legal Standard

"The requirements for enforcement of an administrative subpoena are not onerous."  United States v. Sturm Ruger & Co, 84 F.3d 1, 4 (1st Cir. 1996).  The court will enforce the subpoena if the agency proves that: (1) the subpoena is issued for a congressionally authorized purpose, the information sought

is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena.  Id.  "As long as the agency satisfies these modest requirements, the subpoena is per se reasonable and Fourth Amendment concerns are deemed satisfied."  Id. (citing Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 208 (1946)). "The role of a court in a subpoena enforcement proceeding is strictly limited to inquiring whether the above requirements have been met. 'Such proceedings are designed to be summary in nature.'"  United States v. Comley, 890 F.2d 539, 541 (1st Cir. 1989) (quoting EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)).  "[A]ffidavits of government officials have been accepted as sufficient to make out a prima facie showing that these requirements are satisfied."  Id.

## II.  Background[1]

 Pursuant to the Controlled Substances Act (CSA), the Attorney General is authorized to issue administrative subpoenas to investigate suspected criminal drug activity. 21 U.S.C. § 876(a).  The Attorney General has delegated that authority to the DEA.  28 C.F.R. § 0.100.  The subpoena power extends to "requir[ing] the production of any records (including books, papers, documents, and other tangible things which constitute or

---

 [1] The facts are drawn from the parties' filings.  They are undisputed unless indicated otherwise.

contain evidence) which the Attorney General finds relevant or material to" any investigation being conducted pursuant to the CSA.  21 U.S.C. § 876(a).  The CSA permits subpoenas to be served on natural persons by personal delivery.  Id. § 876(b). The CSA further provides that "[i]n the case of contumacy by or refusal to obey a subp[o]ena issued to any person," the federal court has jurisdiction to compel compliance.  Id. § 876(c).

The New Hampshire Board of Pharmacy operates the PDMP. N.H. Rev. Stat. Ann. § 318-B:33, I.  All "prescribers and dispensers" of certain controlled substances are required to submit information to the PDMP database, including the patient's name and address and the type, quantity and refill regimen of the prescribed substance.  Id. § 318-B:33, IV (a)-(o). Information the PDMP gathers is confidential and can be released for research and educational purposes if the data is "de-identified."  Id. § 318-B:34.  As particularly relevant here, the PDMP can release information to "authorized law enforcement officials . . . for the purpose of investigation and prosecution of a criminal offense when presented with a court order based on probable cause."  Id. § 318-B:35, I(a)(3).

On June 13, 2018, the DEA served a subpoena on Ricco Jonas which requested all PDMP records pertaining to a particular individual dating back to February 2016.[2]  Subpoena, doc. no. 1-

---

[2] The DEA first served the subpoena naming PDMP.  The New Hampshire Attorney General objected on the ground that the PDMP

3

3.  Ricco Jonas, represented by the New Hampshire Attorney General, objected to providing the requested information. Galdieri Ltr., doc. no. 1-2.  The instant petition followed.

## III. Analysis

Ricco Jonas claims that the petition "is nothing more than an attempt to circumvent federal law," Def. Obj., doc. no. 7, at 3, and asserts several grounds for denial.  The court addresses them in turn.

### A.  Threshold burden

Ricco Jonas first argues that the DOJ has failed to meet its burden of showing that its investigation has a legitimate authorized purpose.  Id.  DEA Investigator Stern's declaration doc. no. 8-1, persuades the court that DOJ has met these "modest requirements."[3]  Sturm Ruger & Co, 84 F.3d at 4.  She states that the New Hampshire Board of Pharmacy provided her with information "regarding the potential diversion of large amounts of opiates through pharmacies" in New Hampshire.  Id. ¶ 2.

-------

was not a "person" within the meaning of the CSA.  Without conceding the point, the DEA nevertheless subsequently served the subpoena naming Ricco Jonas.

[3] The DOJ asserts that it appended Stern's declaration to its reply memorandum, rather than its original petition, because Ricco Jonas raised this threshold argument for the first time in her objection to the Petition, rather than in the letter announcing her refusal to comply with the subpoena.  Reply. Mem., doc no. 8, at 2 n.1.  The court takes no issue with the timing of the submission.

Investigator Stern stated further that "an individual [was] reported to be filling fraudulent prescriptions for . . . control[led] substances which he receives from out-of-state practitioners in New Hampshire."  Id.

  "The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances.  Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels."  Gonzalez v. Raich, 545 U.S. 1, 12-13 (2005) (footnotes omitted).  Given this mandate and the Attorney General's authority under 21 U.S.C. § 876(a) to "require production of any records . . . which the Attorney General finds relevant or material to the investigation," the court has little trouble finding that the DOJ has proven that the subpoena is relevant to a congressionally authorized purpose, the information sought is adequately described and DEA followed proper procedures.  Sturm Ruger & Co., 84 F.3d at 4.  Ricco Jonas does not contest the adequacy of the DOJ's evidence on this issue.

     B.  Suit against the State of New Hampshire

    Ricco Jonas next asserts that the subpoena cannot be enforced because it was issued to her in her official capacity as PDMP Program Manager, rather than in her personal capacity. This distinction, she argues, has significant ramifications. Ricco Jonas contends that such an "official capacity" subpoena

is the equivalent of an action against the State of New Hampshire.  And, she argues, because the State is not a "person" under 21 U.S.C. § 876(c), the subpoena is unenforceable.  Def. Mem., doc no. 7, at 13.  Ricco Jonas's argument founders on the initial premise – that DOJ has sued the State by serving her with a subpoena.  As will be explained in more detail below, the court finds that this action is not a suit against the State.

Ricco Jonas has cited no authority for her proposition that her being served because of her position as PDMP manager converts this subpoena enforcement action into a suit against the State of New Hampshire.  Indeed, the weight of persuasive authority is against her.

Generally speaking, "[f]ederal subpoenas routinely issue to state and federal employees to produce official records or appear and testify in court and are fully enforceable despite any claim of immunity." United States v. Juvenile Male 1, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006).  Although the First Circuit Court of Appeals has not addressed the precise issue Ricco Jonas raises, another district court in this Circuit has recently observed that a motion to compel non-party discovery from a state agency is not a suit against the state because it "will not result in a judgment of any kind requiring financial payment from the state." United States v. Univ. of Mass., 167 F. Supp. 2d 221, 225 (D. Mass. 2016).  In reaching this conclusion, the court relied on Allen v. Woodford, 544 F. Supp.

2d 1074 (E.D. Cal. 2008), adopting rep. and rec., 543 F. Supp.
2d 1138).  In Allen, a prison inmate sought document production
from several state agencies under the Federal Rules of Civil
Procedure.  Id. at 1075.  The agencies claimed Eleventh
Amendment immunity.  Id.  The court defined the "threshold issue
[as] whether issuance and required compliance with a third-party
subpoena by State custodians of records in an action in which
the State is not a party constitutes" a suit against the state.
Id. at 1078.  The court concluded that the subpoena was not a
suit.  Id.

     Several aspects of the Allen court's reasoning are
instructive here.  First, the court observed that discovery from
a state agency can only be obtained through the custodians of
records or "other employees having custody and control of the
information or documents sought."  Id. at 1079.  In this case,
the DEA served the subpoena on Ricco Jonas because, as her
counsel conceded at oral argument, she has custody and control
over PDMP information.  Next, the Allen court remarked that:

> Neither the State, nor any of its employees to whom
> subpoenas have been directed to obtain the information
> sought, that have been found essential to the
> prosecution of the Plaintiff's case, are parties, nor
> has any relief in law or equity been sought against
> them or the State.  No judgment will be issued in this
> action against the State that could have any
> conceivable effect on the State treasury; the State
> custodians are only subpoenaed to produce documents
> for use in the prosecution of this federal civil
> rights action.  The Non-Parties' assertion that they
> must comply with the subpoenas in their official
> capacities as custodians of record is irrelevant; no

judgment or other relief of any kind is sought against
them in this litigation.

Id. (emphasis added).

The Allen court also cited two cases that further persuade
the court that this action is not a suit against the State.
First, in Florida Dept. of State v. Treasure Salvors, Inc., 458
U.S. 670 (1982), the plurality approved service of process on
state officials in possession of certain artifacts.  Rejecting
the state's immunity argument, the Court declared that "[i]t is
clear that the process at issue was directed only at state
officials and not at the State itself or any agency of the
State."  Id. at 691.  The Court concluded: "Treasure Salvors is
not asserting a claim for damages against either the State of
Florida or its officials. . . .  The relief sought is not barred
by the Eleventh Amendment."  Id. at 699.

Allen also cited with approval Laxalt v. C.K. McClatchy,
109 F.R.D. 632 (D. Nev. 1986), a libel suit in which the
district court rejected a Nevada gaming agency's claim that the
Eleventh Amendment barred compliance with a federal subpoena.
Id. at 633.  The Laxalt court first noted that only assertions
of liability and claims for relief against the state are
considered to be "lawsuits against a state."  Id. at 634.  It
then found the case's similarity to Treasure Salvors, Inc.,
dispositive, because "inspection and copying of state records is
all that is being sought . . . ."  Id. at 634-35.  Other cases

have employed the same analysis and reached the same result.
See, e.g., Jackson v. AFSCME Local 196, No. 3:07CV0471(JCH),
2008 WL 1848900, at *2 (D. Conn. Apr. 25, 2008) (finding that
subpoena on state agency official was not an action against the
state); Arista Records LLC v. Does 1-14, No. 7:08cv00205, 2008
WL 5350246, at *5 (W.D. Va. Dec. 22, 2008) (same; citing
Jackson).

Ultimately, Ricco Jonas's argument that the State of New
Hampshire is not a "person," within the meaning of the CSA begs
the question of whether DOJ has initiated a suit against the
State merely by naming her and her title in the subpoena.  Given
the one-sided authority that Ricco Jonas has not contradicted,
the court finds that her assertion that she "must comply with
the subpoenas in [her] official capacity[y] as custodians of
record is irrelevant."  Allen, 544 F. Supp. 2d at 1079.
"[I]nspection and copying of state records is all that is being
sought . . . ."  Laxalt, 109 F.R.D. at 634-35.  This action is
not a suit against the State of New Hampshire.  The court
therefore need not reach the question of whether the State is a
"person" within the meaning of the CSA.[4]

_____

[4] DOJ also relies on Ott v. City of Milwaukee, 682 F.3d 552,
556 (7th Cir. 2012) in which the court rejected an immunity
defense in a discovery dispute.  Ott, however, is inapposite, as
it relied on federal discovery rules definitions to find that a
city agency was a "person."  By contrast, this case involves a
federal statute.  Also misplaced is Ricco Jonas's reliance on Al
Fayed v. CIA, 229 F.3d 272 (D.C. Cir. 2000), in which the Court
held that the CIA is not a "person" within the meaning 28 U.S.C.

C.  Supremacy Clause

Ricco Jonas next argues that DOJ must demonstrate probable cause to seize the PDMP records as required by N.H. Rev. Stat. Ann. § 318-B:35(I)(b)(3).  This argument fails because the Supremacy Clause of the Constitution preempts the provisions of New Hampshire law upon which Ricco Jonas relies.  Under the Supremacy Clause, state laws that "interfere with, or are contrary to the laws of [C]ongress" are invalid. U.S. Const. art. VI, cl. 2.  Unless Congress directs otherwise, the Supremacy Clause preempts state laws which are in conflict with federal law.  Hillman v. Maretta, 569 U.S. 483, 490 (2013). Such conflicts exist when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597 (1991) (quoting Hines v. Davidowitz, 312 U.S. 52 (1941)). "If the purpose of the [federal] act ... must be frustrated and its provisions be refused their natural effect," then a conflict exists.  Savage v. Jones, 225 U.S. 501, 533 (1912).

---

§ 1782, which gives district courts power to order a person to produce documents for use in foreign or international tribunals. Id. at 275-76.  Al Fayed, however, involved a federal discovery subpoena served on a federal agency in private litigation, not, as here, an administrative subpoena served by a federal agency on a state-agency record custodian.  Regardless, because the court finds that this action is not a "suit" against the State, it does not reach the issue of whether the State is a "person" under the CSA.

Several courts have invoked the Supremacy Clause in enforcing administrative subpoenas issued under the CSA.  As especially relevant here, three of those cases involved prescription drug databases similar to the NH PDMP.  For example, in Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin., 860 F.3d 1228 (9th Cir. 2017) the court held that the CSA preempted an Oregon statute requiring "a valid court order" before that state's PDMP could comply with a DEA subpoena.  Id. at 1236.  The Court observed that the "Oregon statute stands as an obstacle to the full implementation of the CSA because it interferes with the methods by which the federal statute was designed to reach [its] goal."  Id. (citing Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 103 (1992)) (internal quotation marks omitted).  Similarly, in United States Dep't of Justice v. Utah Dep't of Commerce, No. 2:16-cv-611, 2017 WL 3189868 (D. Utah July 27, 2017), the court, relying on the Supremacy Clause, found that the CSA preempted the state's requirement of a warrant to access a state prescription database.  Id. at *6.  Also, in United States Dep't of Justice v. Colo. Bd. Of Pharm, Civ. No. 10-cv-0116-WYD-MEH, 2010 WL 3547898 (D. Colo. Aug. 13, 2010), rep. and rec. aff'd and adopted, 2010 WL 3547896 (Sept. 3, 2010), the court addressed a DEA subpoena issued to the Colorado PDMP seeking information about three prescription prescribers.  The PDMP did not comply, arguing that a Colorado statute only allowed the release

information related to patients.  After observing that the state statute would require the DEA to individually review the records of hundreds of pharmacies to find information on three prescribers, the court found that the state statute was an "obstacle to the DEA's efforts to conduct its investigation," id. at *4, and that the CSA therefore preempted the state restriction.  Id.; see also United States v. Mich. Dep't of Cmty. Health, No. 1:10-mc-109, 2011 WL 2412602 (W.D. Mich. June 9, 2011) (enforcing DEA subpoena seeking information from state medical marijuana database despite state confidentiality provision).

Courts have also relied on the Supremacy Clause to uphold administrative subpoenas in other contexts.  See, e.g., Presly v. United States, 895 F.3d 1284 (8th Cir. 2018) (rejecting argument that Florida Constitution's privacy provisions can affect Internal Revenue Service's ability to subpoena bank records); United States ex rel. Office of Inspector Gen. v. Philadelphia Hous. Auth., Misc. No. 10-0205, 2011 WL 382765, at *5 (E.D. Pa. Feb. 4, 2011) (rejecting city housing authority's reliance on state privacy laws because they "obstruct fulfillment" of an administrative subpoena issued by the Officer of Inspector General of the Department of Housing and Urban Development); Massanari v. Nw. Cmty. Mental Health Ctr., No. 01-MC-50E, 2001 WL 1518137, at *1 (W.D.N.Y. Nov. 7, 2001) (finding that defendant must comply with Social Security Commissioner's

administrative subpoena despite privacy provisions of New York law); St. Luke's Reg'l Med. Ctr., Inc. v. United States, 717 F. Supp. 665, 666 (N.D. Iowa 1989) (rejecting doctor's reliance on state disclosure prohibitions to avoid complying with Department of Health and Human Services administrative subpoena in Medicaid investigation).

Given the consistent weight of authority, the court is persuaded that giving effect to New Hampshire's requirement of a court order based on probable cause would create "an obstacle to the full implementation of the CSA because it interferes with the methods by which the federal statute was designed to reach [its] goal." Oregon Prescription Drug Monitoring Program, 860 F.3d at 1236. The state statute is therefore preempted and must give way to the CSA's subpoena process.

D.  Fourth Amendment

Even if New Hampshire's warrant requirement is pre-empted, Ricco Jonas argues that DOJ must nevertheless satisfy the Fourth Amendment's protection against unreasonable searches and seizures.[5]

---

[5] Ricco Jonas also contends that the DOJ, apparently fearful of her argument that the State of New Hampshire is not a "person" under the CSA, is now claiming that it served her in her individual capacity. In that capacity, she argues, she can only comply with the subpoena by violating state law because, in her personal capacity, she has no legal right to the information." Def. Obj., doc. no. 7, at 9. As the court has already concluded, however, the official capacity/personal capacity analysis is irrelevant here.

Ricco Jonas asserts both the State's and other individuals' Fourth Amendment privacy interests in the personal information PDMP possesses.  DOJ argues that Rico Jonas does not have standing to raise this argument on others' behalf.  The standing issue is not dispositive.  Assuming without deciding that Ricco Jonas does have standing – either in her own right or on behalf of others -- the Court of Appeals has held that "Fourth Amendment concerns are deemed satisfied" if the agency proves that the subpoena seeks information relevant to an authorized purpose, is adequately described and was issued in accordance with proper procedures.  Sturm Ruger, 84 F.3d at 4; see also United States v. Tivian Labs., Inc., 589 F.2d 49, 54 (1st Cir. 1978) ("A subpoena may be issued without first obtaining a court's permission . . .  and may be judicially enforced without a showing that probable, or even reasonable, cause exists to believe that a violation of law has occurred.") (citation omitted). As previously noted, supra, p. 6, DOJ has already cleared this hurdle.

---

Moreover, the court does not interpret the DOJ's argument in the manner Ricco Jonas suggests.  The CSA allows service on a "natural person," 21 U.S.C. § 876(b), and allows court enforcement of a subpoena issued to "any person."  Id. § 876(c). "If a party is going to subpoena documents from the government, they need to subpoena the person who has possession, custody, or control over the documents . . . ."  United States v. 2121 Celeste Road SW, Albuquerque, N.M., 307 F.R.D. 572, 590–91 (D.N.M. 2015) (emphasis added).  Ricco Jonas does not dispute that she is that person. Def. Obj., doc. no. 7, at 6 (citing N.H. Admin. R. Ph. 1505.03(c)).

But that is not the end of the inquiry.  As the Supreme
Court recently observed, "[t]he Government will be able to use
subpoenas to acquire records in the overwhelming majority of
investigations" but "a warrant is required in the rare case
where the suspect has a legitimate privacy interest in records
held by a third party."  Carpenter v. United States, 138 S. Ct.
2206, 2222 (2018).  In Carpenter, the Court found that the
criminal defendant had a reasonable expectation of privacy in
"cell-site location information" that ostensibly tracked his
whereabouts based on information retrieved from cell phone
towers.  Accordingly, it found that the government could not use
a court order authorized by the Stored Communications Act which
required only "reasonable grounds," rather than probable cause,
to retrieve the information.  Id. at 2222-23; see 18 U.S.C. §
2703(d).  Here, however, the patients whose interests Ricco
Jonas advances do not have such a reasonable expectation of
privacy.

Ricco Jonas relies on two cases for the proposition that
patients have a Fourth Amendment-based expectation of privacy in
their prescription drug records and that DOJ must therefore
demonstrate probable cause.  See Douglas v. Dobbs, 419 F.3d
1097, 1102 (10th Cir. 2005); Doe v. Se. Pa. Transp. Auth., 72
F.3d 1133, 1138 (3d Cir. 1995).  But neither case supports the
weight that Ricco Jonas places upon them.  While both noted the
patient's privacy interest in prescription information, both

also noted that the right is "not absolute."  Douglas, 419 F.3d
at 1102 n.3; Doe, 72 F.3d at 1138.  See also Whalen v. Roe, 429
U.S. 589, 602 (1977) (holding that patients' expectation of
privacy in their prescription drug use must be weighed against
the state's interest in monitoring the use of controlled
substances).  Moreover, Dobbs explicitly declined to resolve the
issue of whether a warrant is required to conduct an
investigatory search of prescription records, finding only that,
for purposes of a qualified immunity analysis, the issue was
unsettled.  419 F.3d at 1103; see also, Pyle v. Woods, 874 F.3d
1257, 1264 (10th Cir. 2017) (observing that as of April 2013 "no
court had conducted the necessary analysis and no judicial
opinion held that a warrantless search of a prescription drug
database by state law enforcement officials is
unconstitutional.").

     Ultimately, Rico Jonas cites no case holding that the
Fourth Amendment requires DOJ to obtain a warrant to secure
information from a state prescription database and the only case
to directly address the issue has held that the DEA may access
state prescription databases without a warrant.  In Utah Dep't
of Commerce, supra, the court enforced a DEA subpoena issued to
the Utah equivalent of the PDMP.  The court's reasoning is
persuasive.  It first noted that "the pharmaceutical industry,
like the mining, firearms, and liquor industries, is a
pervasively regulated industry and that consequently pharmacists

and distributors subject to the [CSA] have a reduced expectation of privacy in the records kept in compliance with the [CSA]." Id. at *8 (quoting United States v. Acklen, 690 F.2d 70, 75 (6th Cir. 1982)); see also New York v. Burger, 482 U.S. 691, 702 (1987) ("Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search . . . have lessened application in this context."). The CSA, the court concluded, created the expectation that "the prescription and use of controlled substances will happen under the watchful eye of the federal government." Id.

Next, the court observed that the Utah prescription database's mandatory reporting requirements further eroded patients' claimed right to privacy. In trusting a prescribing physician with health information, "a patient takes the risk — in this circumstance, a certainty — that his or her information will be conveyed to the government as required by the Database Act." Id. (citing United States v. Miller, 425 U.S. 435, 443 (1976) (holding that the Fourth Amendment does not bar the government from obtaining information "revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the

third party will not be betrayed.")).  As a result, the Court

found, the mandatory reporting requirement "means the State

already has decided that any individual right to privacy in

one's prescription drug records is outweighed by a

countervailing interest in the government monitoring the

prescriptions for unlawful or improper use," id., and that

"physicians and patients have no reasonable expectation of

privacy from the DEA in the Utah database."  Id.

The Utah Dep't of Commerce court's reasoning is an

appropriate fit for this case.  While New Hampshire law treats

PDMP information as confidential, see N.H. Rev. Stat. Ann. §

318-B:34, I, it also makes clear that program information about

a patient can be disclosed "to others who are authorized by

state or federal law" to receive such information.  Id.  In

addition, the law allows the PDMP to provide information to a

variety of entities, including state medical boards and other

states' prescription safety programs.  See id., § 318-B:35, I-

III.

Ricco Jonas argues that the holding in Utah Dep't of

Commerce is contrary to the Tenth Circuit Court of Appeals's

declaration in Dobbs, that patients have a right to privacy in

their prescription drug records.  But as previously noted, Dobbs

cautioned that that right is not absolute.  In addition, Dobbs

presciently observed that "state law can operate to diminish the

privacy expectation in prescription drug records."  419 F.3d at

1102 n.3.  New Hampshire law has done exactly that.  To the
extent that Ricco Jonas has standing to assert their claims,
patients do not have a reasonable expectation of privacy in the
records maintained by the PDMP.


## IV. Conclusion

The court agrees with the government's view that "Ricco
Jonas's objection . . . make[s] the simple complicated.  Gov.
Rep., doc no. 8, at 1.  The CSA authorizes the court to enforce
subpoenas issued to "any person."  21 U.S.C. § 876(c).  The
government has met its burden to satisfy the "modest
requirements" for enforcement.  "The State has, admirably,
placed considerable controls and precautions on [PDMP] access.
The determination that a[n] [order supported by probable cause]
is required of . . . State and local law enforcement officers .
. . is within the State's authority.  But the State's attempt to
regulate federal law enforcement fails."  Utah Dep't of
Commerce, 2017 WL 3189868 at *9 (internal quotation marks and
footnote omitted).  Accordingly, the court recommends that the
district judge grant the government's petition to compel doc.
no. 1.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice. See
Fed.R.Civ.P. 72(b)(2).  Failure to file specific written
objections to this Report and Recommendation within the

19

specified time waives the right to appeal the district court's order.  See <u>Santos-Santos v. Torres-Centeno</u>, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

November 1, 2018

cc:  Seth R. Aframe, Esq.
     Anthony Galdieri, Esq.
     Lawrence Edelman, Esq.