UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE | ) | |
| | ) | |
| v. | ) | 1:18-mc-056-LM |
| | ) | |
| MICHELLE RICCO JONAS | ) | |

UNITED STATES' RESPONSE TO RESPONDENT'S
OBJECTION TO THE REPORT AND RECOMMENDATION

I.    INTRODUCTION.

The United States Drug Enforcement Administration (DEA) served an administrative

subpoena on Michelle Ricco Jonas, the director of the New Hampshire Prescription Drug

Monitoring Program (PDMP), seeking records relevant to an on-going investigation.  Jonas

refused to comply on the ground that the subpoena served on her was actually served on the State

of New Hampshire.  She contends that this Court lacks the authority to order a State to comply

with a DEA administrative subpoena.  Jonas also argues that the Fourth Amendment of the

United States Constitution requires a search warrant in order to obtain prescription records.

Therefore, Jonas posits that federal law prevents the use of an administrative subpoena to obtain

prescription records maintained by the PDMP.

After extensive briefing and oral argument, the magistrate judge issued a twenty-page

order rejecting these arguments.  As to the jurisdictional argument, the magistrate judge rejected

Jonas' premise that United States Department of Justice's enforcement action was an action

against the State of New Hampshire.  Rather, the magistrate judge concluded that the subpoena

was issued to a person -- Jonas -- and the petition to enforce the subpoena was also against Jonas.

On the Fourth Amendment claim, the magistrate judge concluded that there is no reasonable

expectation of privacy in the PDMP records, and therefore the DEA may obtain PDMP records

via subpoena. For the reasons stated here and in the United States Department of Justice's earlier

filings in this case (DNs 1 and 8), the magistrate judge's rulings were correct.  Therefore, this

Court should adopt the report and recommendation and order Jonas to comply with the

subpoena.

II.    <u>BACKGROUND</u>.

The PDMP is a database operated by the New Hampshire Board of Pharmacy.  Under

New Hampshire law, every dispenser of schedule II through IV of controlled substances must

submit the following information to the PDMP:

(a) Dispenser's Drug Enforcement Administration (DEA) registration number;

(b) Prescriber's DEA registration number;

(c) Date of dispensing;

(d) Prescription number;

(e) Number of refills granted;

(f) National Drug Code (NDC) of drug dispensed;

(g) Quantity dispensed;

(h) Number of days supply of drug;

(i) Patient's name;

(j) Patient's address;

(k) Patient's date of birth;

(l) Patient's telephone number, if available;

(m) Date prescription was written by prescriber;

(n) Whether the prescription is new or a refill; and

(o) Source of payment for prescription.

The State allows dissemination of PDMP data to the boards of dentistry, nursing, medicine, optometry, podiatry, veterinary medicine and pharmacy so long as the information is requested pursuant to the board duties and relates to prescribing or dispensing activity, which indicates possible fraudulent conduct. N.H. Rev. Stat. Ann. 318-B-35.  It also allows dissemination to controlled drug health and safety programs from other states so long as the information is managed in accord with the other state's law and to entities that operates a secure interstate prescription drug data exchange system for the purpose of interoperability and the mutual secure exchange of information among prescription drug monitoring programs.  Id. Finally, the State permits access by law enforcement officials on a case-by-case basis for the purpose of investigation and prosecution of criminal offenses when presented with a court order based on probable cause.  This last requirement is the nub of the present dispute.

The United States Drug Enforcement Administration (DEA) is conducting an investigation into a person for potentially filling fraudulent prescriptions for Schedule II controlled substances in New Hampshire, which the individual received from out-of-state practitioners.  In furtherance of this investigation, on June 11, 2018, the DEA served an administrative subpoena on Jonas, the PDMP manager, for PDMP records relevant to this investigation.  There is no dispute that Jonas has possession, custody or control over the PDMP records subpoenaed by the DEA.

The DEA issued the administrative subpoena to Jonas under authority granted to it by the Controlled Substances Act (CSA), 21 U.S.C. §  876.  The CSA authorizes the Attorney General to issue administrative subpoenas to investigate drug crimes and other misconduct related to controlled substances:

> In any investigation relating to his functions under [the CSA]
> with respect to controlled substances . . . the Attorney General

> may require . . . the production of any record (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

21 U.S.C. § 876(a).  The Attorney General has delegated this subpoena authority to the DEA. 28 C.F R. § 0.100.

The CSA provides that a subpoena may be served upon any natural person by personal delivery.  21 U.S.C. § 876(b).  Further, "in the case of contumacy or refusal to obey a subpena [sic] issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction which the investigation is carried on or on which the subpenaed [sic] person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subpena [sic].  21 U.S.C. § 876(c).  Under this provision, the court may order the subpoenaed person to produce the requested records and hold in contempt a person who fails to comply with such an order.  Id.

## II.    THIS COURT HAS THE AUTHORITY TO
## ENFORCE THE SUBPOENA ISSUED TO JONAS.

Jonas argues that the subpoena is invalid because this Court does not have the power to enforce the subpoena under 21 U.S.C. § 876(c).  She premises her argument on the assertion that the DEA served the subpoena on her in her official capacity.  Relying on law about official capacity lawsuits, Jonas says that a subpoena served on her in her official capacity was actually served on the State of New Hampshire.  Jonas says that § 867(c) gives this Court enforcement power only over a subpoena issued to "any person."  Since, according to Jonas, the State is not a person, she contends that this Court lacks the authority to enforce the subpoena.

The magistrate judge correctly rejected this argument.  The argument begins from a false premise, namely that the subpoena was served on Jonas in an official capacity.  Jonas was served

with the subpoena because she is a person with custody and control over the records that the DEA seeks: "If a party is going to subpoena documents from the government, they need to subpoena the person who has possession, custody or control over the documents." United States v. 2121 Celsete Road SW, Albuquerque N.M., 307 F.R.D. 572, 591 (D.N.M. 2015).  That is precisely what the DEA did here.

"Federal subpoenas routinely issue to state and federal employees to produce official records. . . ." United States v. Juvenile Male 1, 431 F. Supp. 2d 1012, 1016 (D. Ariz. 2006). There was nothing unusual or improper about subpoenaing Jonas, the person with control of the relevant records.  Jonas did not become any less of a person merely because she has control of the documents at issue because of her state employment.

Jonas is also incorrect when she says that "this case is a suit against the State, as that term is commonly defined, used, and understood."  DN 14 at 10.  A subpoena is not itself a judicial action; it is a command that a person produce certain materials.  The action here is the enforcement petition filed by the United States Department of Justice against Jonas, the person who has failed to comply with the subpoena.  The magistrate judge correctly ruled that an enforcement action against a state official who has refused to comply with a subpoena for documents is not a suit against the State.

In reaching this conclusion, the magistrate judge correctly relied on Eleventh Amendment cases.  As this Court knows, under the Eleventh Amendment, a suit against a state official in his or her official capacity is a suit against the State and is thus barred.  Cichocki v. Mass. Bay Community College, 199 F. Supp. 3d 431, 438 (D. Mass. 2016).  The magistrate judge relied on case law holding that an action seeking to enforce a subpoena issued to a state official is not an official capacity action against the State but rather an action against the individual who was

served with the subpoena and therefore such an action may proceed consistent with the Eleventh

Amendment.  E.g., United States v. Univ. of Mass., 167 F. Supp. 3d 221, 225 (D. Mass. 2016);

Allen v. Woodford, 544 F. Supp. 2d 1074 (E.D. Cal. 2008); Jackson v. AFSCME, 2008 WL

1848900, at *2 (D. Conn. Apr. 25, 2008); Arista Records v. Does 1-14, 2008 WL 5350246, at * 5

(W.D. Va. Dec. 22, 2008); Laxalt v. C.K. McClatchy, 109 F.R.D. 632 (D. Nev. 1986).

Contrary to Jonas' suggestion, this case law is responsive to her argument.  Jonas says

that she received the subpoena because she is a government official with control over the

relevant documents and therefore she received the subpoena in her official capacity.  According

to her, the United States Department of Justice's petition to enforce that subpoena is thus a suit

against the State of New Hampshire.  The cases cited by the magistrate judge soundly reject this

contention.  They hold that an action to enforce a subpoena issued to a state employee for records

in that employee's control is not an official capacity action and therefore can proceed in federal

court despite state immunity.  For the reasons stated in these cases, Jonas wrongly claims that the

enforcement action against her was in reality an action against the State of New Hampshire.

Rather, the pending action seeks an order against Jonas to comply with the DEA subpoena issued

to her.  That action (and the subpoena) are directed to Jonas -- a person.  Therefore, this Court

has the authority under § 876(c) to order her to comply.

III.     EVEN IF THE SUBPOENA WAS SERVED ON
         THE STATE, THIS COURT WOULD STILL
          HAVE THE AUTHORITY TO ORDER THE STATE TO COMPLY.

Just like the magistrate judge, this Court should not reach the argument that takes up most

of Jonas' objection, namely, whether the word "person" as used in § 876(c) includes the State.

The Court needs to address this argument because, for the reasons described supra, the subpoena

and the action to enforce the subpoena were directed to a person (Jonas) and not the State of New

Hampshire. But, in any event, if the Court reached the question, it should conclude that "person," as used in § 876(c) includes the State.

Jonas provides background about the CSA to argue that Congress wanted to exclude States from the administrative subpoena provisions because, generally, the CSA was intended to encourage state and federal authorities to cooperate in the regulation of controlled substances. Based on this cooperative thrust, Jonas says that allowing the federal government to compel state compliance with a federal subpoena would be inconsistent with the CSA.

The one aspect of the CSA that Jonas ignores, however, is the actual administrative subpoena provision that is at issue in this case. The phrase most squarely at issue here is, "In the case of contumacy by or refusal to obey a subpena [sic] issued to any person . . ." This provision was not written by Congress for the CSA. Rather, numerous enactments authorizing the enforcement of administrative subpoenas by myriad agencies, dating back at least to the National Labor Relations Act in 1935, use precisely the same language that is employed in 21 U.S.C. § 876(c). E.g., 16 U.S.C. § 4017(c); 7 U.S.C. § 4317; 15 U.S.C. § 77v; 7 U.S.C. § 4511; 7 U.S.C. § 6412; 7 U.S.C. § 4816(c)(1); 7 U.S.C.§ 6308; 42 U.S.C. § 1320a-4; 7 U.S.C. § 7488; 20 U.S.C. § 1097a; 12 U.S.C. § 3108(4)(A); 7 U.S.C. § 161; 7 U.S.C. § 6809; 42 U.S.C. § 1997a-1; 16 U.S.C. § 1174; 7 U.S.C. § 7108; 7 U.S.C. § 2717; 15 U.S.C. § 330c; 21 U.S.C. § 969; 7 U.S.C. § 6010; 42 U.S.C. § 405; 42 U.S.C. § 6299; 16 U.S.C. § 470ff(c); 16 U.S.C. § 2407; 16 U.S.C. § 2437; 12 U.S.C. § 2404; 42 U.S.C. § 7621; 22 U.S.C. § 286(f); 42 U.S.C. § 4915; 5 U.S.C. § 1507; 12 U.S.C. § 1784; 16 U.S.C. § 825f; 15 U.S.C. § 1714; 21 U.S.C. § 876(c); 15 U.S.C. § 687(b); 18 U.S.C. § 3486; 50 U.S.C. § 4555; 30 U.S.C. § 823; 29 U.S.C. § 161.

This history suggests that Congress did not choose the phrase "any person" in § 876(c) with the intent to exclude States.  Rather, Congress's use of this language in § 876(c) readily suggests that Congress simply codified language that it often chooses when authorizing the judicial enforcement of administrative subpoenas.  The law has treated States as being subject to the same subpoena obligations as other persons and entities.  In re Missouri Dep't of Natural Resources, 105 F.3d 434, 436 (8th Cir. 1997) ("Governmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts."); EEOC v. Illinois State Tollway Auth., 800 F.2d  656, 659 (7th Cir. 1986) (stating that a court may enforce an EEOC administrative subpoena issued to a state agency under the EEOC enforcement provision which uses the same "any person" language as CSA); Ghandi v. Police Dep't. City of Detroit, 74 F.R.D. 115 (E.D. Mich. 1977) (stating that F.B.I. was the "person" to whom plaintiff's subpoena was directed)  There is no reason to think that Congress wanted to follow a different approach here when it adopted the standard subpoena enforcement language that it has used throughout the United States Code.  Accordingly, although this Court need not determine whether § 876(c)'s use of the word 'person' includes the State, if the Court decides to reach the question, it should conclude that 'person' as used in § 876(c) does not include the State.

III.     THE FOURTH AMENDMENT DOES NOT REQUIRE
         A SEARCH WARRANT FOR PDMP RECORDS.

Jonas' last argument is that she does not have to comply with the subpoena because the records sought, i.e., prescription records from the PDMP, may only be obtained via a search warrant under the Fourth Amendment to the United States Constitution. This Court should reject Jonas' argument because she cannot raise the Fourth Amendment interests of other people. And, in any event, this Court should conclude that the PDMP records sought here are not the types of

records for which the Fourth Amendment requires a search warrant because there is no reasonable expectation of privacy in such records.

Jonas argues that she need not comply with the DEA subpoena because complying would violate the Fourth Amendment rights of the person whose prescription drug information the DEA has requested that she produce.  But Jonas cannot raise the Fourth Amendment rights of this other person.

"Fourth Amendment rights are personal to each [person] and may not be asserted vicariously."  United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998).  This rule has been applied both in the exclusionary rule context, Rakas v. Illinois, 439 U.S. 128, 134 (1978) and the § 1983 context, Plumhoff v. Rickard, 572 U.S. 765, 77-78 (2014) (§ 1983 context).  The context here is the ability of a subpoena recipient to claim the Fourth Amendment rights of another person in order to resist complying with an otherwise valid subpoena.

The Supreme Court has already rejected an analogous claim in California Bankers Ass'n. v. Schultz, 416 U.S. 21, 69 (1974).  There, the California Bankers Association and a bank brought a Fourth Amendment claim challenging aspects of the Bank Secrecy Act, which required banks to make certain disclosures of customer information that allegedly would violate the Fourth Amendment interests of bank customers.  There was no party to the case whose information was actually disclosed by the bank. The Supreme Court held that neither the Bank Association nor the Bank could "vicariously assert such Fourth Amendment claims on behalf of bank customers in general."  Id.; see Microsoft Corporation v. United States Department of Justice, 233 F. Supp. 3d 887, 912-915 (W.D. Wash 2017).  Thus, the Court declined to address whether bank compliance with he Bank Secrecy Act disclosure provisions would violate the Fourth Amendment rights of bank customers who were not before the Court.

This ruling should control here.  The privacy interests at stake, to the extent there are any, belong to the individual whose information the DEA seeks from the PDMP.  Jonas does not have the right to assert this person's alleged Fourth Amendment interests as basis for refusing to comply with a subpoena issued to her.  Compare Carpenter v. United States, 138 S. Ct. 2206 (2018) (considering Fourth Amendment challenge for subpoenaed records raised by defendant whose information was disclosed and not by company that received subpoena).[1]

But, even assuming that Jonas has the ability to raise the Fourth Amendment rights of another person, no Fourth Amendment violation would arise from her releasing prescription records of third parties pursuant to an otherwise valid subpoena.  The Fourth Amendment applies when a person has a reasonable expectation of privacy in the place to be searched or item to be seized.  Smith v. Maryland, 442 U.S. 735, 740 (1979).  Absent such an expectation, a search warrant is not required.  In this regard, the Supreme Court recently observed that "the Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations. . . . A warrant is required in the rare case where the suspect has a legitimate privacy interest in records held by a third-party."  Carpenter, 138 S. Ct. at 2222.  This is not such a rare case.

---

[1]     Jonas' response to this argument is to rely on parens patriae standing to argue that a State can raise arguments on behalf of its citizens.  This argument is triply flawed.  First, as already discussed, the State of New Hampshire is not a party to this action.  Supra at 4-6.  Second, the parens patriae does not apply to allow a State to sue the federal government over an alleged constitutional violation.  Massachusetts v. Mellon, 262 U.S. 447, 485-86 (1923); Utah Dep't of Commerce, 2017 WL 3189868, at *5 n.63.  Third, the parens patriae doctrine is an Article III standing doctrine.  Whether a Fourth Amendment right can be asserted vicariously "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."  Rakas v. Illinois, 439 U.S. 128, 140 (1978). Thus, even assuming (incorrectly) that there is Article III standing, that still does not alter the controlling principle that only the person allegedly aggrieved may raise a Fourth Amendment claim.  Because Jonas is not that person, she cannot raise a Fourth Amendment claim as a defense to complying with the subpoena.

"The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected expectation of privacy." California v. Ciraolo, 476 U.S. 207, 211 (1986) (citing Katz v v. United States, 389 U.S. 347 (1967). This inquiry has two parts: first, the individual must manifest a subjective expectation of privacy in the object of the challenged search, and second, society must recognize the subjective expectation as reasonable. Here, of course, no individual person whose prescription records are sought is before the Court. It is therefore impossible to answer the first inquiry, i.e., does the person whose records may be released claim a privacy interest in the records? This is, of course, why a Fourth Amendment claim cannot be raised vicariously. Supra at 9-10. Regardless, even if a person claimed a subjective privacy interest in prescription records, that assertion is objectively unreasonable.

The United States Supreme Court dealt with a regulatory scheme similar to the PDMP in Whalen v. Roe, 429 U.S. 589 (1977). There, New York maintained a database of all persons who obtained certain controlled drugs. Under that law, the information collected could be disclosed by a way of a subpoena. Id. at 594 n.12. The primary argument before the Supreme Court was that the state's database violated the patient's right to privacy under the Fourteenth Amendment. The Court upheld the database. Importantly, in reaching this conclusion, the Court, citing Katz, also observed that there was no Fourth Amendment violation caused by the New York law. Thus, the Whalen Court held that a statute allowing a state agency to aggregate pharmacy data, which then could be disclosed by way of a subpoena, did not violate the Fourth Amendment. Id. at 604 n.32. This holding defeats Jonas' claim. State v. Russo, 790 A.2d 1132, 1151-54 (Conn. 2002) (discussing in detail why Whalen permits access to pharmaceutical records without resort to a search warrant).

Two long-standing Fourth Amendment doctrines, the heavily regulated industry and the third-party doctrines, support <u>Whalen</u>'s conclusion that, under <u>Katz</u>, there is no reasonable expectation of privacy in pharmacy records turned over to a state-maintained database.

There is a reduced expectation of privacy in material that is held by a closely regulated industry. <u>Giragosian v. Bettencourt</u>, 614 F.3d 25, 29 (1st Cir. 2010). New Hampshire and federal law make pharmacies just such an industry. New Hampshire requires pharmacies to be licensed and to keep records of controlled drugs that are sold. These records are open to law enforcement inspection. N.H. Rev. Stat. Ann. 318-B:12, II. New Hampshire's record requirement forces the pharmacy to log the drugs sold, the amount of drugs sold, the person who dispensed the drugs, the identity of the person who received the drugs and the address of that person. <u>Id.</u> § 318B-12, I: This is substantially similar information to the information that the PDMP gathers. Thus, under New Hampshire law, drug records are open to law enforcement scrutiny without a search warrant predicated on probable cause.[2] Federal law also requires registered drug dispensers to keep records of the controlled substances that they dispense. 21 U.S.C. § 876(c). It is hard to see how there can be an objective right to privacy in drug records that the law expressly opens to law enforcement scrutiny on demand.[3]

---

[2]     The openness of drug records to law enforcement scrutiny undermines Jonas' substantial reliance on <u>Douglas v. Dobbs</u>, 419 F.3d 1097, 1103 n.3 and 4 (10th Cir. 2005). The Tenth Circuit specifically observed that state law can operate to diminish the privacy expectation in prescription drug records. Because New Mexico (like New Hampshire) allows the police to review pharmacy records on demand, the court did not address whether probable cause was required to search prescription drug records. Thus, <u>Douglas</u> specifically reserves the question that is at issue here and therefore <u>Douglas</u> does not help Jonas.

[3]     The existence of the PDMP itself also diminishes any objective expectation of privacy. While the PDMP statute limits the dissemination of prescription drug records to law enforcement, it allows dissemination to various medicine-related boards and drug databases in other states. Thus, while the New Hampshire legislature limited police access to the information,

The First Circuit has held expressly that the pharmaceutical industry is a closely regulated industry.  United States v. Gonslaves, 435 F.3d 64, 67 (1st Cir. 2006).  Other courts have reached the same conclusion. United States v. Nechy, 827 F.2d 1161, 1166 (7th Cir. 1987); United States v. Schiffman, 572 F.2d 1137, 1140-41 (5th Cir. 1978); United States v. Acklen, 690 F.2d 70, 75 (6th Cir. 1982); United States Dep't of Justice v. Utah Dep't of Commerce, 2017 WL 3189868, at *8 (D. Utah July 27, 2017); State v. Welch, 624 A.2d 1105, 1110 (Vt. 1992); Stone v. Stow, 593 N.E. 2d 294, 300 (Ohio 1992).  This substantial body of case law supports the notion that there is a reduced expectation of privacy in pharmaceutical records because there is an established understanding that the government can review pharmacy records without resorting to a search warrant.  One court put the point succinctly, "Given [the] long history of government scrutiny, patients who fill prescriptions for narcotic drugs . . . should reasonably expect that their prescription drugs will be available to appropriate government agents . . . ."  Murphy v. State, 62 P.3d 533, 541 (Wash. App. Ct. 2003).[4]

In addition to the heavily-regulated nature of the pharmaceutical industry, the third-party doctrine also supports the conclusion that there is no reasonable expectation of privacy in prescription drug records.  This doctrine was well described in United States v. Miller, 425 U.S. 435 (1976). The Court recognized that there is no expectation of privacy in material that a "person knowingly exposes to the public . . ." Id. at 442.  The Court determined that the content

---

it did not eliminate the possibility that the information would be provided to other third parties on demand.

[4]     Jonas cites cases that speak generally about the expectation of privacy in medical records. But this case is not about medical records generally; it is about prescription drug records which have long been open to government inspection in a manner that does not apply to other medical records.  Zadeh v. Robinson, 902 F.3d 483, 492 (5th Cir. 2018) (stating that medical industry as a whole is not a closely regulated industry but the pharmaceutical aspect of the industry is).

of a customer's bank records is not protected by the Fourth Amendment under this rule because the customer voluntarily exposed the information to bank employees in the ordinary course of business.  The Court concluded that the bank customer, "takes the risk in revealing his affairs to another, that the information will be conveyed . . . to the Government." Id.  This is so even if the customer conveyed the information to the bank on the assumption that the information revealed would be used for a limited purpose and kept confidential.  Id. at 443.Thus, the Court concluded that, under the third-party doctrine, the government may, consistent with the Fourth Amendment, use a subpoena to obtain a customer's bank records.

Miller's logic applies with equal force to prescription records.  To obtain a controlled drug, a person must share the prescription provided with a drug dispenser.  Of course, the reason that the patient provides the prescription to the dispenser is to receive the prescribed drug.  But, by doing so, the person exposes the information about prescription to a third-person -- the pharmacy.  Under Miller, even assuming that the patient believed that information was being provided to the pharmacy in confidence, the patient's act of exposing the prescription to the pharmacy removes it from Fourth Amendment protection.  But, of course, no patient should even have such an expectation of privacy, since the pharmacy is required by law to log the transaction (including the type of drug and the patient's name and address) and make it available for police inspection.  Supra at 12.

It is certainly true that drug records (like bank records) are highly confidential to some people. But, as the Supreme Court recognized in Miller, that is not the point.  Once a patient discloses the prescription record to a third party, there is no Fourth Amendment protection, even

assuming the patient would object to further dissemination of the information.  See Utah Dep't of Commerce, 2017 WL 3189868, at * 8-9; Wiedeman, 835 N.W. 2d at 712.[5]

Jonas responds that the Supreme Court's recent decision in Carpenter v. United States, 138 S. Ct. 2206 (2018) sufficiently curtails the third-party doctrine articulated in Miller such that this Court should conclude that, post-Carpenter, there is a reasonable expectation of privacy in prescription records.  Not so.

Carpenter held that the third-party doctrine did not apply to cell-site location data that a telephone company generates from a customer's use of a cellphone.  Contrary to Jonas' suggestion, Carpenter was not a wholesale rejection of the third-party doctrine. Rather, it was a recognition that the doctrine required adjustment to account for the new reality that modern mobile telephones allow the police to have "the ability to chronicle a person's past movements." The Court held that the third-party doctrine did not apply because a person retains a legitimate expectation of privacy in his or her physical movements: "Given the unique nature of cell phone location information, the fact that the Government obtained the information for a third party does not overcome [a] claim to Fourth Amendment protection."  138 S. Ct. at 2220.  Nevertheless, in the very next paragraph of the Court's opinion, the Court made clear that decision it reached was "narrow" and was not intended to disturb the application of Miller.  Id.

Prescription drug records are not a new form of technology that provides the government with access to constitutionally protected information from a third party that was previously unavailable.  Rather, it is just the opposite. Because of state law requirements, law enforcement

---

[5]     In addition to Fourth Amendment doctrines and statutory requirements of drug records, there is another reason that there is no objective expectation of privacy in prescription drug records--pharmacies sell these records as a commodity.  Given that reality, no reasonable person should believe that there prescription records will be kept secret.  United States v. Zadeh, 820 F.3d 746, 755 n.43 (noting this fact in response to a claim of privacy in prescription records).

has long had access to records about the distribution of controlled drugs.  Murphy, 62 P.2d at 313 (stating that access to prescription drugs does not present a situation where the government is able to obtain information because of modern technological advances).  This case involves records that a person must disclose to a pharmacy to obtain a controlled drug.  That is much like the information which a person must disclose to a bank to engage in a necessary financial transaction.  Miller, which was undisturbed by Carpenter, thus remains the controlling authority.

In addition to Carpenter, the defendant relies on Oregon Prescription Drug Monitoring Program v. United States Drug Enforcement Agency, 998 F. Supp. 2d 957, 966 (D. Or. 2014). That decision, which was subsequently vacated by the Ninth Circuit, did hold that there was a reasonable expectation of privacy in prescription records provided to a state-managed database.

In reaching its conclusion, the Oregon court noted that, even though people share their prescription records with third parties, they do not expect that these records will be shared with law enforcement.  But that reasoning misses the whole point of Miller.  Miller assumed that the bank customer would not expect that the bank would further disseminate his or her information. Nevertheless, the Court said that it was the person's act of turning the document over to the bank which removed it from the Fourth Amendment's ambit, regardless of the customer's expectation about further dissemination. All of the information that PDMP possesses came from prescription records provided to it by a third-party drug dispenser, after the patient had provided the information to that dispenser.  Thus, Miller is on point.

The court also disputes Miller's applicability by asserting that drug records are different from bank records because "drug records are inherently more personal or private."  This assumption is based on nothing more than the judge's own predilections.  Consider casual dinner party conversation:  Some people are willing to talk at length about their finances while others

never say a word on the subject.  The same is true for drug prescriptions:  Some will describe

every ailment in detail while others would never do so. Thus, the court's 'analysis' is nothing

more than an ipse dixit about which records are more personal. That sort of 'reasoning' does not

provide a sound path for this Court to follow.

Finally, the <u>Oregon</u> court says that the only way a person can avoid having his

prescription records shielded from the PDMP is to avoid going to a pharmacy since the patient

has no control over the pharmacy sending the records to the PDMP.  This too misses the point.

Even if the pharmacy did not have to send records to the PDMP, the information is still open to

inspection by law enforcement and thus no objective person would believe that the records are

private.  While it is true the prescription drug records are shared with third parties by necessity,

so too are bank records and banks (like pharmacies) are required by law to share some of the

information with the government because of mandatory reporting requirements.  The <u>Oregon</u>

<u>PDMP</u> decision is entirely unconvincing in explaining why <u>Miller</u> is inapposite.  Therefore, the

magistrate judge was correct in concluding that the Fourth Amendment does not prohibit the use

of a subpoena to obtain PDMP records.

IV.    <u>CONCLUSION</u>.

For the reasons stated here and in the Department of Justice's filings before the magistrate judge, this Court should adopt the magistrate judge's report and recommendation.

Dated:

Respectfully submitted,
SCOTT W. MURRAY
United States Attorney


By:  /s/ Seth R. Aframe
Seth R. Aframe, AUSA
53 Pleasant Street, 5th Floor
Concord, NH  03301
(603) 225-1552
seth.aframe@usdoj.gov


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this response has been forwarded this date via ECF electronic filing to all counsel of record.

/s/ Seth R. Aframe
Seth R. Aframe, AUSA