UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____
                                            )
UNITED STATES DEPARTMENT OF JUSTICE,        )
                                            )
                  Petitioner                )
                                            )
v.                                          )   Case No. 19-cv-030-LM
                                            )
MICHELLE RICCO JONAS,                       )
                                            )
                  Respondent                )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY JUDGMENT PENDING APPEAL**

Michelle Ricco Jonas ("Ricco Jonas"), by and through her attorneys, the Office of the New Hampshire Attorney General, presents the following Memorandum of Law in support of her Motion to Stay the January 29, 2019 Judgment of the District Court (ECF Doc. # 19), which was entered in accordance with a January 17, 2019 Order (McCafferty, C.J.) (ECF Doc. # 18) (the "January 17 Order) approving a November 1, 2018 Report and Recommendation (Johnstone, M.J.) (ECF Doc. # 11) ("R&R"):

**Case Background[1]**

Pursuant to state statute, New Hampshire's Board of Pharmacy established a Prescription Drug Monitoring Program ("PDMP"), a database to facilitate the confidential sharing of information concerning the prescribing and dispensing of Schedule II-IV controlled substances by health care practitioners and pharmacies. The database, populated by the mandatory reporting

---

[1] Ricco Jonas incorporates the content of her November 30, 2018 Objection (ECF Doc. # 14) to the R&R by reference.

1

of dispensing pharmacists, includes fulsome patient and drug identifiers. The PDMP is not a law enforcement tool. Rather it is aimed squarely at "improv[ing] medical treatment *** [and] reducing patient morbidity and mortality by providing a *secure* program through which the prescriber and dispenser may access on a patient's controlled drug prescription history." RSA 318-B:31-41 [Controlled Drug Prescription Health and Safety Program – Statement of Intent] (emphasis supplied).

The United States Drug Enforcement Administration ("DEA") served an Administrative Subpoena upon Ricco Jonas, as Program Director for the PDMP, seeking disclosure of certain patient-specific prescription drug data in furtherance of a "legitimate law enforcement inquiry." On behalf of Ricco Jonas, the Office of the New Hampshire Attorney General ("NHAG") duly objected to the Subpoena. Thereafter, the United States Department of Justice ("USDOJ") commenced the instant enforcement action under 21 U.S.C. § 876(c).

As Ricco Jonas had no lawful access to this State's PDMP database except in her *official* capacity, *and* as the law deems an action against a state official, identified according to her job title, as one against the State, the NHAG appeared and objected to the Petition to Enforce, stating that by its plain language, *and* viewed *in pari materia* with neighboring sections of the Controlled Substances Act ("CSA"), the declared authority for the administrative subpoena – 21 U.S.C. § 876 [CSA – Subpoena] – did not authorize the DEA to subpoena States or their sovereign agencies or officials. The NHAG invoked the "longstanding interpretive presumption" that power conferred under 21 U.S.C. § 876 – to serve and enforce an administrative subpoena against a "person" – *excludes* States, their sovereign agencies, and their officials, including New Hampshire PDMP Program Manager Ricco Jonas. *See, e.g.*, *Vt. Agency*

*of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780 (2000).  The legislative history of the CSA was likewise consistent with that "longstanding interpretive presumption."

The USDOJ's papers offered no statutory analysis sufficient to overcome the statutory presumption.  Nonetheless, the Magistrate and, in turn, the District Court, sidestepped the statutory analysis, declaring instead that the entire line of inquiry – *i.e.*, the scope and reach of the DEA's administrative subpoena power under 21 U.S.C. § 876 – was "irrelevant" in light of a manifest *non sequitur* – that in a federal court action, an effort to enforce a discovery subpoena against a non-party State custodian of records does not amount to a "suit" against the State for Eleventh Amendment immunity purposes.[2]  That was error.  The instant case does not involve a discovery subpoena against a non-party under the Federal Rules and has nothing whatsoever to do with Eleventh Amendment immunity.  It involves a threshold issue of statutory interpretation – *i.e.*, whether Congress intended the word "person" as used in 21 U.S.C. § 876, to include the sovereign States, their agencies, and their officials.  The District Court was obliged to reach and consider that issue in deciding this case, rather than to avoid it.

Next, the State's Objection to the R&R pointed out that where there is a reasonable expectation of privacy in subpoenaed documents, the DEA's use of an administrative subpoena to seize them offends the Fourth Amendment and is therefore improper.  *In re Gimbel*, 77 F.3d 593, 564 (2d Cir. 1996).  In *Oregon Prescription Drug Monitoring Program v. United States Drug Enforcement Agency*, 998 F. Supp. 2d 957, 966 (D. Or. 2014), *reversed on other grounds*, 860 F.3d 1228 (9th Cir. 2016) ("*Oregon PDMP*"), the *only* published decision addressing an

---

[2] The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any **suit** in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. 11 (emphasis supplied).

effort by the DEA, via administrative subpoena, to obtain PDMP-kept, patient-identifiable and diagnosis-suggestive[3] prescription drug data, the District of Oregon pointed to the abundance of Supreme and Circuit Court case law recognizing a reasonable expectation of privacy in medical records, including prescription drug records, and so "conclude[d] that the DEA's use of administrative subpoenas to obtain prescription drug records from [Oregon's] PDMP violate[d] the Fourth Amendment." *Id.* at 967.

While duly briefed by the State, the R&R and, in turn, the January 17 Order, did not address the holding in *Oregon PDMP* and, instead, relied entirely upon an unpublished decision by the District of Utah to find that there exists no reasonable expectation of privacy in patients' PDMP-kept prescription drug data. That decision, *United States Dept. of Justice v. Utah Dept. of Commerce*, 2017 WL 3189868 (D. Utah July 27, 2017) ("*Utah PDMP*"), put aside the Supreme and Circuit Court authorities that recognize patients' reasonable expectation of privacy in their intimate medical records and *adopted* the DEA's argument, rejected in *Oregon PDMP*, that the so-called "third party doctrine" extinguished any reasonable expectation of privacy in PDMP-kept prescription drug records. According to *Utah PDMP*, "a patient takes the risk – in this circumstance, a certainty – that his or her information will be conveyed to the government as required by [the Utah PDMP legislation]. *Id*. at *8. That very same reasoning, deemed by the R&R and, in turn, the January 17 Order, to be "persuasive," R&R at 16, was roundly rejected by the United States Supreme Court in *Carpenter v. United States*, ___ U.S. ___, 138 S. Ct. 2206 (2018).

---

[3] *See Douglas v. Dobbs,* 419 F.3d 1097, 1102 (10th Cir. 2005); *State of Louisiana v. Skinner*, 10 So.3d 1212, 1217 (La. 2009).

4

*Carpenter* concerned the time-stamped Cell Site Location Information (CSLI) that is transmitted by customers to third party wireless carriers – that is, by moving about with their smartphones – and whether individuals, including crime suspects like Mr. Carpenter, have a reasonable expectation of privacy therein. Pointing to the third party doctrine, the Sixth Circuit held that Mr. Carpenter had no reasonable expectation of privacy in the time-stamped location data obtained by the FBI because he *shared* that information with his wireless carrier. The Supreme Court reversed, stating that

> Cell phone location **[read: PDMP-kept prescription drug]** information is not truly 'shared' as one normally understands the term. \*\*\* [C]ell phones **[like health care]** and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one **[read: obtaining health care and drug treatment therapies]** is indispensable to participation in modern society. \*\*\* Apart from disconnecting the phone from the network **[read: forgoing health care and drug treatment therapies]**, there is no way to avoid leaving behind a trail of location **[read: prescription drug]** data. As a result, in no meaningful sense does the user **[or patient]** voluntarily assume[] the risk of turning over a comprehensive dossier of his physical movements **[read: prescription drug data]**.

*Id*. at 2220. Simply put, *Carpenter* rejects *Utah PDMP* (nonetheless favored by this District Court) and endorses *Oregon PDMP*. The R&R and, in turn, the January 17 Order, put aside patients' reasonable expectation of privacy in their intimate information and approved the DEA's use of an extra-judicial administrative subpoena – on the strength of *Utah PDMP*. This was contrary to the law of the land, as laid out in *Carpenter*.[4]

---

[4] The R&R, adopted by the January 17 Order, also repeated that portion of *Utah PDMP* which suggested that pharmaceuticals, like "mining, firearms and liquor," are so "pervasively regulated" that everybody expects "the prescription and use of controlled substances [to] happen under the watchful eye of the federal government." *Utah Dept of Commerce*, 2017 WL 3189868, at \*8. But the delivery of health care services is in no way akin to "mining, firearms and liquor," and the reasonable privacy expectations of patients in their intimate medical or prescription drug records are in no way diminished by government oversight of the health care industry. *See Tucson Woman's Clinic*, 379 F.3d at 550-51; *Margaret S. v. Edwards,* 488 F. Supp. 181, 215-17 (E.D. La. 1980).

**The Instant Appeal**

Thus, on appeal to the First Circuit, the State will contend that the District Court Judgment should be reversed on two grounds.

First, the Judgment fails to properly address whether the term "person" as used in 21 U.S.C. § 876 includes the State, its agencies, and its officials, including Ricco Jonas. 21 U.S.C. § 876 does not authorize the issuance or enforcement of such subpoenas as a matter of law. The Judgment fails to address the significant differences between an administrative investigatory subpoena and a discovery subpoena. The Judgment also fails to conduct any analysis regarding the fact that the State is the real party at interest and that the effect of extending Section 876 to the State PDMP eviscerates the core privacy restriction the state legislature believed was necessary in order for such a database to exist in this State as a health care, as opposed to a law enforcement, tool. The Judgment ignored these significant sovereign interests. Consequently, this Court does not have jurisdiction to enforce an administrative subpoena issued to a State, its agencies, or its officials to compel the State to act under 21 U.S.C. § 876.

Second, the Judgment fails to recognize (a) that New Hampshire citizens have a reasonable expectation of privacy in their PDMP-kept data under the Fourth Amendment of the United States Constitution, (b) that the United States Supreme Court's holding in *Carpenter* favors *Oregon PDMP* and rejects *Utah PDMP*, upon which the District Court explicitly relied, and (c) that, as a consequence, the USDOJ's Petition to Enforce the DEA's administrative subpoena should have properly been dismissed.

## The Standard of Review on a Motion to Stay
## a District Court Judgment Pending Appeal

"Under [Fed. R. Civ. P.] 62(c), district courts generally have the authority to stay their orders pending appeal." *NAACP v. Trump*, 321 F. Supp.3d 143, 146 (D.D.C. 2018), *citing Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The decision whether to stay a district court judgment pending appeal requires "consideration of four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009), *quoting Hilton,* 481 U.S. at 776. "These four factors 'are not prerequisites that must be met, but interrelated considerations that must be balanced.'" *Concerned Pastors for Social Action v. Khouri*, 844 F.3d 546, 549 (6th Cir. 2016), *quoting In re EPA*, 803 F.3d 804, 806 (6th Cir. 2015). But, the "first two factors … are the most critical." *Nken*, 556 U.S. at 434. "The Court analyzes the first two factors on a sliding scale in which the 'required degree of irreparable harm increases as the probability of success decreases,' and considers 'where the public interest lies separately from and in addition to whether the applicant for a stay will be irreparably injured absent a stay.'" *Golden Gate Rest. Ass'n v. City of San Francisco,* 512 F.3d 1112, 1115–16 (9th Cir. 2008), *quoting Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007); *see also*, *Vaqueria Tres. Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (The "sliding scale" requires that "[t]he predicted harm and the likelihood of success on the merits … be juxtaposed and weighed in tandem."). Further, the third and fourth factors – "harm to the opposing party and weighing the public interest … merge when the Government [here, there are two] is the opposing party." *Nken*, 556 U.S. at 435.

7

**The Likelihood of Success on Appeal**

The likelihood of success factor does not contemplate that the author of a District Court Order must share the appellant's conviction that he or she erred and thus anticipates reversal on appeal. "To demonstrate a likelihood of success on the merits, the movant must show, 'at a minimum, serious questions going to the merits.'" *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016), *quoting Mich. Coal of Radioactive Mat. Users, Inc. v. Griepentrog*, 845 F.2d 150, 154 (6th Cir. 1991). Put differently, "'it will ordinarily be enough that the [movant] has raised serious legal questions going to the merits, so serious, substantial, difficult and doubtful, as to make them a fair ground of litigation and thus for more deliberative investigation." *Population Institute v. McPherson*, 797 F.2d 1062, 1079 (D.C. Cir. 1986), *quoting Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977); *see Maxcrest Limited* v. *United States of America*, 2016 WL 6599463, at *2 (N.D. Cal. Nov. 7, 2016) ("'[U]nsettled questions of law present serious legal questions so as to demonstrate sufficient likelihood of success on a motion to stay.'"), *quoting Gray v. Golden Gate Nat. Rec. Area*, 2011 WL 6934433, at *1-2 (N.D. Cal. Dec. 29, 2011). As the U.S. District Court for the District of Massachusetts recently stated:

> As to the likelihood of success, the party requesting a stay must show 'more than a mere possibility of relief' on appeal. *Nken*, [556 U.S.] at 434. [The movant] 'need not persuade the court that it is likely to be reversed on appeal,' but the appeal must 'raise serious and difficult questions of law in an area where the law is somewhat unclear.'" *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998).

*Boston Taxi Owners Association, Inc. v. City of Boston*, 187 F. Supp.3d 339, 341-42 (D. Mass. 2016).

Here, putting aside the movant's sincere conviction that the First Circuit will reverse the District Court Judgment – that is, consistent with *Vt. Agency of Nat. Res.*, *Oregon PDMP* and *Carpenter* – it is clear that, at minimum, the instant appeal meets the "likelihood of success" prong of the standard, as explained above.  *See* Case Background and The Instant Appeal, *supra*; *see also*, Objection (ECF Doc. # 14) to R&R.  The case raises important issues relative to (a) the difference between administrative investigative subpoenas and discovery subpoenas, (b) federalism, including whether the State is the real party in interest in this case, and (c) whether, under Section 876, the State, its agencies, and its officers in their official capacities are "persons" who may be subject to the administrative investigative subpoena power of the DEA.  The case also raises important Fourth Amendment issues, including whether New Hampshire citizens have a right to privacy in the medical information that is involuntarily entered into the State PDMP database, so that the use of an administrative subpoena to command disclosure without probable cause is improper.  Consequently, the "likelihood of success" prong of the standard is met.

## Irreparable Injury Absent a Stay

Absent a stay, Ricco Jonas, as Manager of the PDMP, would be obliged to honor the administrative subpoena, the threshold requirements for which are plainly "not onerous," *United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996), and disclose the records of an individual patient's prescribed drug therapies – content that is private, intimate and confidential not only under state law, *see* RSA 318-B:34-35, but also under the United States Constitution.  It is noteworthy that in *Eil v. U.S. Drug Enforcement Administration*, 878 F.3d 392 (1st Cir. 2017), the *USDOJ* prevailed upon the First Circuit to defeat a Freedom of Information Act request that it turn over medical records in the possession of the *DEA*.  The USDOJ urged, and the Court ruled, that "patients have significant privacy interests in their medical records, which we have

described as 'highly personal' and 'intimate in nature.'"). *Id*. at 400, *quoting Kurzon v. Dept. of Health & Human Servs.*, 649 F.2d 65, 68 (1st Cir. 1981).[5]  Noting that patients "ha[ve] a constitutional right to privacy in [their] prescription drug records," the Tenth Circuit explained:

> [P]rotection of a right to privacy in a person's prescription records, which contain intimate facts of a personal nature, is sufficiently similar to other areas protected within the ambit of privacy. **Information contained in prescription records … may reveal other facts about what illnesses a person has….**

*Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) (emphasis supplied).

The highlighted point raised in *Douglas* – that prescription drug records are frequently suggestive of patients' underlying medical diagnoses – is particularly noteworthy.  As the Third Circuit explained:

> It is now possible from looking at an individual's prescription records to determine that person's illnesses….  This is precisely the sort intended to be protected by penumbras of privacy.  An individual using prescription drugs has a right to expect that such information will customarily remain private.

*Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3rd Cir. 1995).  This is certainly so with the Schedule II-IV controlled drug data kept by the PDMP, including, by way of example only, Xanax (alprazolam) (anxiety, panic disorders), Valium (diazepam) (anxiety disorders), Ritalin (ADHD), Testosterone (delayed puberty, impotence or other hormonal imbalances), and Marinol (dronabinol) (AIDS weight loss or chemotherapy induced nausea).  *See* Declaration of Michelle Ricco Jonas (ECF Doc. # 7-8) at 1 n. 1; *see also*, www.pdr.net; www.drugs.com.

Thus, the Court is presented with the individual named in the DEA's administrative subpoena, whose PDMP-kept prescription drug therapies over a three year period would, absent a stay, be disclosed.  A First Circuit reversal of the District Court Judgment would in no way

---

[5] According to the USDOJ's Brief in *Eil*, "[p]rivacy interests are significant when the records at issue contain personal medical information because those records are 'highly personal' and 'intimate in nature.'" DEA Brief, 2017 WL 1505877, at *27, *quoting Kurzon*, 649 F.2d at 68.

10

vindicate the privacy rights of that individual, whose "highly personal" and "intimate" medical information could not be clawed back. Neither this Court nor the First Circuit "could un-ring th[at] bell." *See John Doe Company v. Consumer Finance Protection Bureau*, 235 F. Supp.3d 194, 206 (D.D.C. 2017). Indeed, the "harm to [that individual's] privacy interests would be irreparable because, 'there is nothing a court can do to withdraw all knowledge or information that [DEA] agents may have acquired by examination of [his or her drug therapy information]' once [it] has already been divulged." *Maxcrest Limited* v. *United States of America*, 2016 WL 6599463, at *3 (N.D. Cal. Nov. 7, 2016), *quoting Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

Further, absent a stay, the integrity of the PDMP would be irreparably compromised. As noted *supra*, the state legislature did not create the PDMP as a law enforcement tool, but rather as a health care measure aimed at "improv[ing] medical treatment *** [and] reducing patient morbidity and mortality by providing a ***secure*** program through which the prescriber and dispenser may access on a patient's controlled drug prescription history." RSA 318-B:31-41 [Controlled Drug Prescription Health and Safety Program – Statement of Intent] (emphasis supplied). It then placed probable cause protections around the information contained in the PDMP to prevent it from unwarranted governmental intrusions. This case has been followed by print and television media. *See*, *e.g.*, *Court Standoff Between New Hampshire, Federal Authorities Over Prescription Drug Data*, Concord Monitor, published Aug. 14, 2018. Upon the likely media coverage of PDMP *compliance* with an unstayed District Court Judgment (read: the breach of those privacy protections seemingly built into the governing state statute), some segment of the patient population for whom the constitutional right to privacy is of vital concern may well "forgo medical treatment." *See Oregon PDMP*, 998 F. Supp.2d at 998.

11

In addition, absent a stay, a First Circuit reversal of the District Court Judgment will not clearly vindicate Ricco Jonas for the state crime she will have committed during the course of the appeal.  *See* RSA 318-B:36, VII ("Any person who knowingly accesses … or discloses program information except as authorized in this subdivision … shall be guilty of a class B felony.").  In fact, it will leave Ricco Jonas exposed to criminal liability.  A First Circuit reversal also may expose Ricco Jonas to liability under 42 U.S.C. § 1983 for having "subject[ed] … [the subject patient] to the deprivation of rights, privileges or immunities secured by the Constitution…."

Finally, since neither this Court nor the First Circuit can "un-ring" any of the foregoing "bells" – whether by

- ordering the DEA to return a printout of the patient's already disclosed prescription drug therapy information,

- mounting a media campaign aimed at restoring public confidence in the security of this State's PDMP-kept prescription drug data, or

- immunizing Ricco Jonas from criminal or civil prosecution,

a denial of the instant Motion to Stay may effectively moot the appeal.  *See*, *e.g.*, *Center for International Environmental Law v. Office of the United States Trade Representative*, 240 F. Supp.2d 21, 23 (D.D.C. 2003) (stay warranted for prospective mootness, where document disclosure would forever extinguish confidentiality so that the *status quo* could not be restored).

The irreparable harm prong of the standard is met.

### The Merged Factors of "Harm to the Opposing Party and Weighing the Public Interest"

As noted *supra*, the third and fourth (less critical) factors – "harm to the opposing party and weighing the public interest … merge when the Government [here, there are two] is the opposing party." *Nken*, 556 U.S. at 435.  In the instant case, while it is conceivable that a stay might cause some measure of delay in concluding a DEA investigation of the individual named in the administrative subpoena, the sought after prescription drug therapy information will remain preserved in the PDMP database, available for turnover in the event the DEA's position ultimately prevails.  The question ultimately posed by these merged factors is whether the statewide public health interest in a demonstrably "*secure*" PDMP – one that the is not subject to warrantless and probable cause-free intrusions upon patient privacy at the non-judicial will of the USDOJ/DEA – outweighs the federal government's interest in a delay- and process-free investigation of the subject individual.  It undoubtedly does.

### CONCLUSION

In light of the foregoing, the Motion to Stay should properly be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MICHELLE RICCO JONAS |
|  | By her attorney, |
|  | GORDON J. MACDONALD<br>ATTORNEY GENERAL |
| Date: February 28, 2019 | By: /s/ Lawrence M. Edelman<br>Anthony J. Galdieri, Bar # 18594<br>Senior Assistant Attorney General<br>Lawrence M. Edelman, Bar # 738<br>Assistant Attorney General<br>Civil Bureau<br>New Hampshire Dept. of Justice<br>33 Capitol Street<br>Concord, NH 03301<br>(603) 271-3650<br>anthony.galdieri@doj.nh.gov<br>lawrence.edelman@doj.nh.gov |

## Certificate of Service

I hereby certify that a copy of the foregoing Memorandum of Law was served this 28[h] day of February, 2019, on all counsel of record, via the ECF System.

/s/ Lawrence M. Edelman
Lawrence M. Edelman